■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SALADINE A. HUNTER, Appellant. [709 NYS2d 656] —Rose, J. Appeal from a judgment of the County Court of Broome County (Mathews, J.), rendered March 12, 1999, upon a verdict convicting defendant of the crime of robbery in the second degree.

On the afternoon of October 14, 1998, defendant, Maurice Hughes and Kathleen Mahar went to the apartment of Stephen Greiner, at his request, to sell him crack cocaine. Greiner, believing the cocaine to be fake, refused the offer. In response, Hughes held a knife to Greiner's neck and demanded money. Simultaneously, defendant forced Greiner back against a counter, held his arm, and told him to pay or be cut by Hughes. Mahar left the apartment during this struggle and waited outside. While defendant continued to hold Greiner's arm and covered his mouth, Hughes reached into a front pocket of Greiner's jacket and removed $184. Defendant and Hughes then fled the apartment. Defendant was eventually arrested and indicted for robbery in the first and second degrees and intimidating a witness in the third degree.

Following a jury trial, defendant was found guilty of robbery in the second degree, but acquitted of the other two charges. He was sentenced as a second felony offender to a definite term

of 5 years' imprisonment and 2½ years of postrelease supervision, and he now appeals.

Initially, defendant argues that County Court erred in denying his motion to suppress testimony by the arresting police officer as to statements and admissions defendant made while in custody because the statements were made after he invoked his right to counsel. "A statement by a defendant in custody who has invoked his right to counsel must be suppressed unless it is in fact spontaneous" (*People v Carmine A.*, 53 NY2d 816, 818 [citation omitted]). Spontaneity in a postarrest situation turns on whether a statement made by the defendant was the product of " 'express questioning or its functional equivalent' " (*People v Bryant*, 59 NY2d 786, 788, quoting *Rhode Is. v Innis*, 446 US 291, 300-301).

At the suppression hearing held in this case, the arresting officer testified that after he read defendant his *Miranda* rights and asked whether defendant was willing to answer questions without counsel present, defendant answered, "No, I won't answer your questions, but I'll tell you what happened." The officer replied, "Well, then, tell me what happened." The officer stated that defendant then recounted his version of the incident without questioning by the officer. Although defendant's initial negative response invoked his right to counsel, County Court correctly found that his simultaneous offer to tell what happened and his subsequent narrative were spontaneous because defendant was not responding to interrogation, but merely seeking to limit and control the extent of his statement. Defendant's contention that the officer's reply was the functional equivalent of the question, "Will you tell me what happened?", is unpersuasive because defendant's previous comment had already affirmatively answered that question. The officer's reply plainly was not a question, but merely an acknowledgment that defendant, if he wished, could proceed to tell what happened. Thus, defendant's motion to suppress his account of the incident was properly denied (*see, People v Bryant*, 87 AD2d 873, *affd* 59 NY2d 786, *supra*).

Next, we address defendant's contention that the victim should not have been allowed to make an in-court identification of defendant at trial because the photo array previously shown to Greiner was unduly suggestive. Specifically, defendant argues that in order to meet its burden of proof as to the reliability of this identification procedure, the prosecution was obligated to produce Greiner at the *Wade* hearing because he is an admitted cocaine addict whose mind may have been too "frazzled" from his unsuccessful attempt to purchase cocaine to

make a reliable identification from the photo array so soon after the robbery occurred.

The People assert that the photo array was merely confirmatory because Greiner had prior dealings with defendant, and County Court permitted the in-court identification based on a finding that the photo array was fairly constituted to the extent reasonably possible under all the circumstances. County Court noted that the defendant's photograph in the array had a darker background than the other photos, but nevertheless found that the array was not unduly suggestive, in part because there was a photograph of an individual substantially similar in appearance to defendant and because the police detective had stated that the suspect might or might not be included in the array (see, People v Kennedy, 151 AD2d 831). During the hearing, defendant made no issue of Greiner's mental incapacity to make a reliable identification, and there is no evidence supporting such a contention on appeal. As a result, the prosecution's failure to call Greiner as a witness at the suppression hearing was of no consequence and County Court correctly found that the photo array was not unduly suggestive.

Defendant also contends that County Court's Sandoval ruling "chilled his right to testify." The record reflects that defendant was convicted in Pennsylvania of petit larceny in May 1998 and served nine months in jail. Although not fully described in the record, this conviction apparently arose from defendant's nonforcible theft of money from his employer. Since, as County Court observed, this prior conviction bore logically on his credibility and individual honesty, we find the Sandoval ruling to be a valid exercise of discretion (see, People v Long, 269 AD2d 694, 695).

Finally, defendant maintains that the evidence presented at trial was legally insufficient to sustain a conviction of robbery in the second degree because the victim's testimony was too contradictory to be reliable and because it is equally plausible that defendant's presence during the robbery committed by Hughes was merely a matter of being in the wrong place at the wrong time.

The determination of the legal sufficiency of evidence is based on " 'whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury * * * and as a matter of law satisfy the proof and burden requirements for every element of the crime charged' " (People v Stickles, 267 AD2d 604, 605, quoting People v Bleakley, 69 NY2d 490, 495). Here, defendant

does not dispute that evidence of the elements of the crime of robbery in the second degree was presented through testimony at trial. Specifically, the uncontroverted testimony of Greiner and Mahar established that defendant and Hughes were both present in Greiner's apartment, both told Greiner to give Hughes money, and both used actual and threatened physical force to restrain Greiner while Hughes took money from Greiner's pocket. Other than eliciting an admission from Greiner that he had cravings for cocaine, defendant presented no proof that Greiner's habitual abuse of cocaine impaired his competency to testify or rendered unreliable his account of the events in question. Also, the few insubstantial inconsistencies between Greiner's testimony and his earlier written statement did not render the verdict contrary to the weight of the evidence (*see*, *People v Kelly*, 270 AD2d 511). It was for the jury to assess the credibility of the victim and there is no reason to disturb its conclusion (*see*, *People v Price*, 188 AD2d 681, 682, *lv denied* 81 NY2d 891). The proof outlined above, which was obviously accepted by the jury, provides ample basis for the jury's verdict.

Cardona, P. J., Mercure, Graffeo and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.