■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ISMAEL MELENDEZ and RONALD B. ROBERTS, Appellants. [727 NYS2d 773] —Peters, J. Appeals from two judgments of the County Court of Saratoga County (Scarano, J.), rendered February 17, 1999 and February 2, 1999, upon a verdict convicting defendants of the crimes of robbery in the first degree (two counts), robbery in the second degree, criminal possession of a weapon in the third degree and unlawful imprisonment in the second degree (two counts).

Defendants and Lloyd Kelone were charged in a 12-count indictment with various crimes arising from the robbery of two Mr. Subb employees following an event on August 11, 1997 at the Saratoga Performing Arts Center (hereinafter SPAC) in the City of Saratoga Springs, Saratoga County. According to William Pompa, Jr., manager of the Mr. Subb concession, he and another employee, Robin Nixon, were on route in a company van to one of its nearby stores with a bag containing the cash receipts. After noticing that a vehicle in front of his van pulled off onto the shoulder of the road, Pompa's van made a strange noise and lost power. As he pulled onto the shoulder, Pompa observed the previously stopped vehicle reenter the roadway and stop in front of his stalled van. Two individuals in dark clothes wearing masks and brandishing shotguns approached the van from both sides and shouted orders to Pompa and Nixon. Pompa, seeing the weapons, took the bag containing the cash receipts and held it out the open window. The robbers took the money, duct-taped Pompa and Nixon side-by-side on the floor of the van, and drove with them at gunpoint. When the robbers fled, Pompa and Nixon were left in the van. Ultimately, they acquired police assistance.

Despite an extensive investigation, police authorities were unable to solve the robbery until they received a telephone call from an individual later identified as Wilfredo Vigay. Vigay met with investigators and provided both the details and names of three individuals involved in the robbery. Investigation over the next few months led to defendants' arrest.

At the trial of defendants and Kelone, the People offered, *inter alia*, the testimony of 29 witnesses, many of whom testified concerning confessions or admissions made by one or more defendant. Aaron Allen testified that he worked at the Mr. Subb concession at SPAC and had shared information with defendants and Kelone which included information about the transport of cash receipts at the end of events. After Allen was told that a robbery was planned, he requested 10% of the proceeds. Allen also testified that he told defendants where the van would be parked in the SPAC parking lot, that Kelone drove a Cadillac—the vehicle used by defendants to commit the crime—and that he was aware that Melendez owned a shotgun.

Belinda McGuinness' testimony enabled the People to establish that defendants and Kelone used an electronic device to disable the van. She testified that Kelone was handy with electronics, that prior to the robbery he told her that he had built a device for use in a robbery, and that afterwards he disclosed details of the crime.[1] McGuinness further testified that she visited the home of defendant Ismael Melendez on the day after the robbery and saw the device in his basement when both defendants were present.

Vigay testified that he had a conversation with Melendez prior to the robbery wherein the disabling device was described and he was offered the opportunity to participate in the crime. A second conversation, also before the robbery, took place with defendants and Kelone concerning the disabling device and its placement in the vehicle. Vigay was unable, however, to recall who spoke about what since all were actively participating in the conversation. Finally, Vigay described a conversation with Melendez and Kelone after the robbery during which Kelone disclosed details about the crime.[2]

Robert Cable testified that defendant Ronald B. Roberts admitted to his involvement in the robbery and described the

---

1. County Court provided an appropriate limiting instruction to the jury concerning the fact that they could only consider McGuinness' testimony concerning Kelone's admissions against him.

2. At the conclusion of Vigay's testimony, County Court provided appropriate limiting instructions to the jury.

crime in detail. Tammy Perrine testified that Roberts brought a sawed off shotgun to her home, admitted that he had committed a robbery and advised her that he needed to dispose of the weapon. Ronald Williams testified that he purchased a shotgun from Roberts after the robbery and was thereafter advised by Roberts that since it was used in the commission of the crime, he needed it back.

Testimony was also received from Michael McQueen and Robert Tucker who were incarcerated in the same facility as defendants. While both defendants admitted to McQueen their involvement in the robbery, only Melendez admitted his involvement to Tucker, further describing the electronic device and weapons used.

Neither defendants nor Kelone testified at trial. At its conclusion, the jury returned a verdict convicting defendants and Kelone of two counts of robbery in the first degree (*see*, Penal Law § 160.15), robbery in the second degree (*see*, Penal Law § 160.10), criminal possession of a weapon in the third degree (*see*, Penal Law § 265.02) and two counts of unlawful imprisonment in the second degree (*see*, Penal Law § 135.05). Each were thereafter sentenced and only defendants appeal.

Defendants contend that pursuant to *Bruton v United States* (391 US 123), their rights under the 6th Amendment of the US Constitution were violated by the introduction of testimony detailing a confession or admission of a codefendant. The People counter by claiming that the admissions made by defendants and Kelone were not facially incriminating as to any other defendant and, had a *Bruton* violation occurred, the error was harmless.

*Bruton v United States* (*supra*) held that a deprivation of a defendant's rights under the Confrontation Clause takes place if his or her nontestifying codefendant's confession names him or her as a participant in the crime and such confession is introduced at their joint trial; a limiting instruction given to the jury will not be curative (*see*, *id.*). By contrast, no *Bruton* violation will be found to occur when the confession is not incriminating on its face but becomes so only when linked with other evidence introduced at trial (*see*, *Richardson v Marsh*, 481 US 200). An alleged violation of the Confrontation Clause is always subject to a harmless error analysis (*see*, *People v Eastman*, 85 NY2d 265, 277).

Addressing first Kelone's admissions to McGuinness, we find no *Bruton* violation because his statements were not facially incriminatory to defendants. We reach a similar conclusion concerning the admissions which Kelone and defendants made

to Vigay, as well as those statements made by defendants to McQueen and/or Tucker.

Also unavailing is defendants' assertion that their statements to McQueen should not have been admitted because, at the time that they made such statements, McQueen was acting as an agent and confidential informant for the police. County Court properly concluded that McQueen acted independently of the police and provided information on his own initiative (*see, People v Snickles*, 206 AD2d 675, 676, *lv denied* 84 NY2d 872). While McQueen's disclosure to authorities might have been precipitated by self-interest, it was unsolicited and without promise or inducement. For these reasons, we agree that he was not acting as an agent of the government as a matter of law (*see, People v Cardona*, 41 NY2d 333; *see also, People v Gates*, 153 AD2d 68, *lv denied* 75 NY2d 966).

Defendants also assert that County Court committed reversible error by failing to grant their motions for severance based upon the substantial prejudice which inured to each by reason of the inculpatory statements of codefendants introduced at trial. Only Melendez moved for a separate trial pursuant to CPL 200.40 (1), while Roberts moved for severance after the joint trial began.

County Court, in its discretion for good cause shown, may grant a separate trial based upon its determination that a joint trial will yield undue prejudice to a defendant (*see, People v Cardwell*, 78 NY2d 996; *People v Mahboubian*, 74 NY2d 174). However, where, as here, proof against both defendants is supplied to a great extent by the same evidence, only the most " 'cogent reasons warrant a severance' " (*People v Mahboubian, supra*, at 183, quoting *People v Bornholdt*, 33 NY2d 75, 87). Since defendants failed to demonstrate that their defenses were antagonistic, mutually exclusive or irreconcilable, or that their representation had been impaired by virtue of a joint trial (*see, People Mahboubian, supra*), we perceive no error.

As to the unsuccessful proffer by defendants of newspaper articles containing reports on the robbery for the purpose of demonstrating that rather than learning of details of the robbery through admissions of the participants the People's witnesses could have acquired such information from the news stories, we again find no error. Defendants neither testified nor established that any of these witnesses actually read such articles. Having failed to lay a proper foundation, the refusal to admit them was proper (*see, People v Krug*, 282 AD2d 874).

Upon our further review of all evidence presented, viewed in a light most favorable to the People, we find that defendants'

guilt was established beyond a reasonable doubt and that the verdict was not against the weight of the evidence (*see, People v Bleakley,* 69 NY2d 490).

We have reviewed defendants' remaining contentions and reject them as lacking in merit.

Mercure, J. P., Spain, Rose and Lahtinen, JJ., concur. Ordered that the judgments are affirmed.