■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD ROBERTS, Appellant. [784 NYS2d 692]—

Lahtinen, J. Appeal from a judgment of the County Court of Rensselaer County (McGrath, J.), rendered July 8, 1998, upon a verdict convicting defendant of the crime of robbery in the first degree.

Defendant was allegedly a planner and the driver in a scheme with several other individuals to rob an employee of the Vanilla Bean Baking Company as she transported receipts, checks and approximately $5,000 in cash from the company's store in the City of Albany to its store in the City of Troy, Rensselaer County. The victim, accompanied by her 13-year-old daughter, parked near the Troy store and started walking toward it when an individual unsuccessfully attempted to grab a briefcase she was carrying. A second assailant then confronted her with a rifle and, with the assistance of another, took both the briefcase and the victim's purse. The assailants fled to a waiting car and escaped from the scene.

The ensuing police investigation revealed, among other things, that defendant's girlfriend worked at the Troy store and that defendant owned an older Chrysler that was similar to the description of the get-away car given by a witness. Defendant was subsequently arrested and, after inquiring about a plea deal, allegedly made spontaneous statements to police, including, "All I did was drive. No one could say I did anything else. It wasn't right, that little girl was there." Two acquaintances of defendant acknowledged to police that he had indicated to them that he was involved in the Vanilla Bean robbery.

Defendant and Lloyd Kelone, one of the other individuals accused of involvement in the robbery, were tried together on charges of robbery in the first degree (count one) and criminal use of a firearm in the first degree (count two). County Court charged only the first count to the jury, which found both defendant and Kelone guilty.* Defendant was sentenced to a prison term of 12½ to 25 years and now appeals.

He initially argues that his oral statements made to Police Sergeant Mary Kay O'Neill outside the presence of his attorney should have been suppressed. At the time of his statements, defendant was in custody and had asserted his right to counsel. The statements were thus subject to suppression unless the People established beyond a reasonable doubt that they were spontaneous (*see People v Burns [Kidy]*, 281 AD2d 704, 705 [2001], *lvs denied* 96 NY2d 826, 831 [2001]; *People v Ryan*, 279 AD2d 713, 714 [2001], *lv denied* 96 NY2d 806 [2001]; *People v Hunter*, 273 AD2d 500, 501 [2000], *lv denied* 95 NY2d 935 [2000]). "In order for such statements to be characterized as spontaneous, it must 'be shown that they were in no way the product of an "interrogation environment", the result of "express questioning or its functional equivalent" ' " (*People v Harris*, 57 NY2d 335, 342 [1982], *cert denied* 460 US 1047 [1983], quoting *People v Stoesser*, 53 NY2d 648, 650 [1981]; *see People v Rivers*, 56 NY2d 476, 479-480 [1982]).

O'Neill testified at the *Huntley* hearing that, after defendant made a phone call on the evening of his arrest, he inquired of her whether the District Attorney's office would be offering a deal. She responded that she did not know and asked who was representing him. She then reportedly called the Assistant District Attorney who was on duty to relay defendant's inquiry and also told him who defendant had said was representing him. Shortly thereafter and without any further comment from O'Neill, defendant started making statements regarding his

---

* An appeal by Kelone was previously decided (*People v Kelone*, 278 AD2d 656 [2000]).

involvement. O'Neill testified that she told him he should "not give something and get nothing for it" and that he should "wait for an attorney," but defendant nevertheless made statements implicating his involvement in the robbery. County Court credited O'Neill's testimony and concluded that defendant's statements were spontaneous and not the result of an inducement, provocation or encouragement by police. Upon review of the record, we find no reason to disregard County Court's acceptance of O'Neill's factual recitation and those facts support the conclusion that defendant's statements were spontaneous.

Defendant further argues that a gun found after he gave a written statement should have been suppressed. With his counsel present and against counsel's advice, defendant provided a detailed written statement regarding the robbery, ostensibly hoping a plea offer would follow. In negotiating the terms of the statement, the People agreed to language inserted by defendant's attorney providing that "any statement [defendant] make[s] may not be used in evidence against [him] in a court of law, except for impeachment purposes." A plea agreement never materialized and the content of the statement assisted police in finding a gun used in the robbery. County Court denied defendant's motion to suppress the gun since no mention was made in the statement prohibiting its derivative use. Under the particular circumstances presented here, we are unpersuaded that County Court erred in its denial of defendant's motion to suppress this evidence. Moreover, in light of defendant's role as a driver and there being no significant probability of his acquittal had the gun been excluded from evidence, even if we had found error in admitting the gun into evidence, it would be harmless error (see People v O'Connor, 6 AD3d 738, 740 [2004]; People v Wright, 5 AD3d 873, 876 [2004]).

We turn next to defendant's contention that the prosecutor made improper comments during the People's opening and closing statements. Reversal is warranted when a prosecutor's improprieties cause such substantial prejudice as to deny a defendant a fair trial (see People v Calabria, 94 NY2d 519, 522-523 [2000]; People v Russell, 307 AD2d 385, 386-387 [2003]; see also People v Levandowski, 8 AD3d 898, 901 [2004]). Making such a determination "turns on the severity and frequency of the conduct, whether the trial court took appropriate action to dilute the effect of the conduct and whether, from a review of the evidence, it can be said that the result would have been the same absent such conduct" (People v Tarantola, 178 AD2d 768, 770 [1991], lv denied 79 NY2d 954 [1992]; see People v Russell, supra at 386). While the prosecutor pushed the bounds of

propriety with some of her comments, they do not—singularly or cumulatively—rise to the level of reversible error. Her efforts to unduly expound on the victim's fear in her opening statement was cut short by a sustained objection. The inartful comment in the opening statement about hearing from defendant, when considered in context, was an attempt to state that defendant's statements to several people regarding his involvement in the robbery would be presented through those witnesses. Most of the complained-of comments in the closing argument were not objected to and thus not preserved for review. However, even if we were to consider them in the interest of justice, the statements did not deprive defendant of a fair trial.

Defendant asserts that County Court erred in limiting his cross-examination of Michael McQueen, an inmate to whom he allegedly confessed the robbery. Defendant's statements to McQueen also implicated Kelone, the codefendant, and County Court prohibited questions as to statements by defendant that indicated Kelone was involved in the robbery. This was a proper limitation necessary to protect the rights of the codefendant (*see Bruton v United States*, 391 US 123 [1968]; *People v Timberlake*, 300 AD2d 219, 219-220 [2002], *lv denied* 99 NY2d 633 [2003]; *People v Melendez*, 285 AD2d 819, 821-822 [2001], *lv denied* 97 NY2d 731 [2002]), and defendant failed to show prejudice to his defense by the exclusion of such testimony. Indeed, when the issue was being addressed prior to McQueen's testimony, County Court further noted that statements by defendant to McQueen would be impermissible hearsay as regards Kelone, and defendant's attorney did not express a definite desire to pursue that line of questioning.

Contrary to defendant's contention, our review of the record reveals that the constitutionally required effective assistance of counsel was afforded to him by his attorney, whose representation was meaningful (*see People v Taylor*, 1 NY3d 174, 175-176 [2003]). His attorney filed appropriate pretrial motions, made an opening and closing that advanced a viable theory for the defense, cross-examined the People's witnesses and drew attention to weaknesses in the prosecution's case. Nor is the sentence harsh and excessive, particularly in light of defendant's extensive criminal record that included numerous prior convictions (*see People v Miles*, 8 AD3d 758, 761 [2004]; *People v Rieder*, 8 AD3d 757, 757-758 [2004]). The remaining arguments have been considered and found unpersuasive.

Mercure, J.P., Peters, Mugglin and Rose, JJ., concur. Ordered that the judgment is affirmed.