■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONNELL WILLIAMS, Appellant. [814 NYS2d 353]—

Spain, J. Appeal from a judgment of the County Court of Schenectady County (Giardino, J.), rendered November 12, 2003, upon a verdict convicting defendant of the crimes of murder in the second degree and criminal possession of a weapon in the second degree.

Following a three-week jury trial, defendant was convicted of intentional second degree murder and criminal possession of a weapon in the second degree for the shooting death of 25-year-old Andres Benitez (hereinafter the victim). The shooting occurred on a residential street in the City of Schenectady, Schenectady County, during the afternoon of December 15, 2001 in front of a crowd of witnesses. The trial testimony established that defendant and the victim were members of separate gangs which sold illegal drugs on that street, competing for customers and territorial control. The backdrop for the shooting was an incident which occurred in the early morning hours that day at a nearby nightclub, in which one of defendant's fellow gang members, Martin Devine, came into possession of the victim's gun, a .357 magnum revolver (the murder weapon), apparently by trickery, leading to a dispute over the gun which ended with shots fired in the club's parking lot. Approximately 12 hours later, the victim and several cohorts arrived at the scene, intend-

ing to regain possession of his gun; they met up with defendant and several of his associates (there was conflicting testimony as to whether Devine was outside with defendant or in one of the nearby houses). The leaders agreed that the victim and Devine would engage in a fist fight but, during the ensuing heated verbal exchange, the victim punched defendant in the face. Defendant became enraged and announced that the dispute would be settled with guns, while the victim and members of both sides tried unsuccessfully to diffuse the situation, urging continued resort to a fist fight. Defendant then brandished the victim's gun and shot him in the chest at close range. The victim grabbed his chest and turned to flee, but defendant continued shooting at him, striking him twice in the back and causing his almost immediate death.

The prosecution produced eight eyewitnesses who testified at trial, including neighbors and gang insiders. Most witnesses testified that during the encounter the victim either did not have or did not display a gun; some said they saw the victim surrender a gun, a .22 caliber, to a cohort at the outset of the encounter, which was given back to the victim only after defendant declared that the dispute would be resolved with guns. Most witnesses observed that the victim did not return fire, although a few testified that he did so but only after he was mortally wounded; others testified that one of the victim's associates took the gun from the victim's hand or waist and returned defendant's fire. No one, except defendant, testified that the victim drew the gun or pointed it in defendant's direction or threatened to do so before defendant started shooting.

Defendant fled to New York City where he was apprehended 11 months later. At trial, the defense initially pursued an open-ended, nonspecific strategy challenging the charges; when defendant testified, he admitted shooting the victim, but asserted that he had acted in self-defense. Defendant testified that he took the victim's gun from Devine just before the encounter in order to prevent a gun battle and only shot the victim when the victim pointed the gun at him. The jury determined that defendant's actions were not justified. Upon his convictions, County Court imposed concurrent prison sentences, the maximum of which was 25 years to life on the murder count, and ordered defendant to pay restitution to the victim's family. On defendant's appeal, defense counsel raises several grounds for reversal, many of which are premised upon inaccurate characterizations of the trial record. We affirm.

Initially, defendant argues that County Court deprived him of a fair trial by permitting, under *Molineux*, extensive testimony

of his prior bad acts and uncharged crimes which, he claims, the prosecutor improperly used as proof of his criminal propensity (*see People v Rojas*, 97 NY2d 32, 36-37 [2001]; *People v Blair*, 90 NY2d 1003, 1004-1005 [1997]; *People v Molineux*, 168 NY 264, 291 [1901]). The court held a combined *Molineux/ Ventmiglia* and *Sandoval* hearing, and revisited the issue frequently during the course of the trial. County Court ruled that evidence regarding defendant's gang membership, drug dealing activities, prior use of guns and the incident at the nightclub 12 hours before the shooting was "inextricably linked [and] interwoven" with the charged crimes, and allowed related testimony in the People's direct case (*see People v Jeanty [Johnson] [Black] [Bernard]*, 268 AD2d 675, 679 [2000], *lvs denied* 94 NY2d 945, 949 [2000]; *see also People v Vails*, 43 NY2d 364, 368-369 [1977]).

We discern no error, finding that this testimony provided necessary background information, and placed the testimony regarding the later confrontation and shooting in context; it also explained how and when defendant came into possession of the murder weapon, how the participants knew one another, and defendant's motives and intent in possessing the gun and shooting the victim (*see People v Tarver*, 2 AD3d 968, 969 [2003]; *People v Coleman [Johnson]*, 296 AD2d 766, 767-768 [2002], *lvs denied* 99 NY2d 534, 536 [2002]). Under these circumstances, the evidence was highly probative of several relevant and material issues at trial and genuinely interwoven with the facts surrounding the shooting, and its probative value outweighed its prejudice (*see People v Alvino*, 71 NY2d 233, 241-242 [1987]; *People v Ventimiglia*, 52 NY2d 350, 359-360 [1981]; *People v Toland*, 284 AD2d 798, 804-805 [2001], *lv denied* 96 NY2d 942 [2001]).

Likewise, County Court properly permitted the prosecutor to cross-examine defendant regarding these matters, based both upon their direct relevance to the charged crimes and their bearing on defendant's credibility as a witness and his justification claim (*see People v Sandoval*, 34 NY2d 371, 374-375 [1974]; *People v Di Bella*, 277 AD2d 699, 701-702 [2000], *lv denied* 96 NY2d 758 [2001]). Contrary to defense counsel's assertion, the prosecutor's pretrial proffer reflected a good faith basis upon which to question defendant regarding the extent of his involvement in the club incident (*see People v Duffy*, 36 NY2d 258, 262 [1975], *amended* 36 NY2d 857 [1975], *cert denied* 423 US 861 [1975]; *People v Mendez*, 279 AD2d 434, 434-435 [2001], *lv denied* 96 NY2d 832 [2001]; *see also People v Alamo*, 23 NY2d 630 [1969], *cert denied* 396 US 879 [1969]; *cf. People v Delacruz*, 127 AD2d 887, 888-889 [1987]). The prosecutor's inability to

procure witnesses at trial to testify to the full extent of defendant's involvement in that incident did not preclude cross-examination of defendant on it. Despite defendant's denials at trial, the prosecutor acted within permissible bounds in arguing to the jury that defendant gained possession of and fired the murder weapon during that incident, conclusions which were fairly inferable from the trial evidence (*see People v Ashwal*, 39 NY2d 105, 109-110 [1976]). Significantly, the court also gave repeated and appropriate limiting instructions to the jury.

Contrary to defendant's arguments (most raised for the first time on appeal), the prosecutor did not improperly comment on defendant's invocation of his right to remain silent (*see People v Hendricks*, 90 NY2d 956, 957 [1997]; *People v Otero*, 217 AD2d 796, 796-797 [1995], *lv denied* 87 NY2d 849 [1995]; *cf. People v Sprague*, 267 AD2d 875, 879-880 [1999], *lv denied* 94 NY2d 925 [2000]). Indeed, when questioned by detectives, defendant did not initially invoke his right to remain silent but, rather, *waived that right* and made post-*Miranda* oral statements that he had never been to Schenectady and did not know the victim, which County Court ruled were admissible after a *Huntley* hearing. The prosecutor's redirect questioning of one of the detectives at trial—and later comments upon summation—merely clarified that defendant had not claimed self-defense to police at that time, which was in response to defense counsel raising that subject on cross-examination of the detective. Thus, the prosecutor did not ask about defendant's invocation of silence but, instead, properly explored defendant's voluntary responses to police which were inconsistent with his later justification testimony. When the prosecutor's summation briefly strayed into comment upon the failure of *defense counsel's* opening statement to assert self-defense, defense counsel promptly objected (and moved for a mistrial) and County Court gave a clear and appropriate curative instruction.

Next, defendant's claims that County Court's justification charge and related supplemental charges to the deliberating jury were erroneous and incomplete were not preserved for appellate review due to the absence of any objections at trial (*see People v Wesley*, 19 AD3d 937 [2005], *lv denied* 5 NY3d 857 [2005]). In any event, reviewing the charge as a whole (*see People v Adams*, 69 NY2d 805, 806 [1987]), we disagree. After reading the statutory definitions for the murder and manslaughter counts, the court provided an accurate and complete charge on justification, explaining that it was the People's burden to prove, beyond a reasonable doubt, that defendant was not justified (*see People v McManus*, 67 NY2d 541, 546-547 [1986]), a

point reemphasized after the exceptions to that defense were outlined (*see* Penal Law § 35.15). After several read-back requests, the court correctly provided a requested rereading of the justification defense, again emphasizing the People's burden. Shortly thereafter, the court reread the elements of the homicide counts at the jury's request and we do not find, as defendant now argues, that the court was also required to again reread the charge on justification, which was not then specifically requested. In our view, County Court acted within its discretion in providing a supplemental instruction which meaningfully responded to the jury's request (*see People v Almodovar*, 62 NY2d 126, 131-132 [1984]; *People v Buckery*, 20 AD3d 821, 823 [2005], *lv denied* 5 NY3d 826 [2005]; *People v King*, 277 AD2d 708, 710 [2000], *lv denied* 96 NY2d 802 [2001]).

Defendant is correct that the order of County Court's charge did not precisely follow the recommendation of the criminal jury instruction in that the justification charge was not read *before* the elements of the crimes and did not list, as the final element of each crime charged, that defendant was not justified (*see* Note to Penal Law § 35.15 justification charge, CJI2d[NY] Defenses, Justification: Use of Deadly Physical Force in Defense of a Person). However, the court repeatedly instructed the jury that the absence of justification was an element of each count. Defendant's remaining claims of error regarding the court's charge to the jury are similarly unavailing.

Defense counsel also contends that the prosecutor engaged in "pervasive acts of misconduct," depriving him of a fair trial and, relatedly, that defendant was denied the effective assistance of trial counsel. The trial transcript reflects, to the contrary, that at every stage of the prosecution, defendant received an eminently fair trial—cautiously guarded by County Court—in which the prosecutor repeatedly sought advance rulings and guidance, endeavored to proceed in compliance with those rulings, and pursued a trial strategy characterized by temperate conduct focusing the jury on the facts relevant to the charged crimes (*see People v Calabria*, 94 NY2d 519, 523 [2000]; *cf. People v De Vito*, 21 AD3d 696, 700 [2005]). The prosecutor's summation focused on the overwhelming testimony establishing defendant's guilt and undermining his self-defense testimony and credibility, and stayed within the bounds of fair advocacy (*cf. People v Gorghan*, 13 AD3d 908, 909-911 [2004], *appeal dismissed* 4 NY3d 798 [2005]; *People v Levandowski*, 8 AD3d 898, 901 [2004]; *People v Russell*, 307 AD2d 385, 386 [2003]). Simply put, there was no pervasive pattern of prejudice or misconduct by the prosecutor, and no effort to shift the burden of proof to defendant.

Turning to defendant's claims of ineffective trial assistance, we have rejected the merits of many of the contentions underlying this claim. Further, the record reflects defense counsel's rigorous pursuit of defendant's interest, including an omnibus motion achieving exclusion of certain evidence, and his extensive cross-examination and effective impeachment of prosecution witnesses at trial. Faced with a multitude of eyewitness accounts, defense counsel pursued a viable trial strategy which allowed defendant to defer the decision whether to testify and claim self-defense. Counsel's summation focused on the testimony supporting justification, and properly sought to dissuade the jury from convicting defendant based upon his lifestyle. Defendant has not satisfied his high burden of demonstrating that he did not receive meaningful representation (*see People v Benevento*, 91 NY2d 708, 712-713 [1998]; *People v Hobot*, 84 NY2d 1021, 1022 [1995]).

We have reviewed each of defendant's remaining assertions challenging the verdict, many of which are unpreserved, and find either that they lack merit or do not warrant reversal in view of the overwhelming evidence of defendant's guilt (*see People v Crimmins*, 36 NY2d 230, 241-242 [1975]).

Finally, we are unpersuaded that there are any extraordinary circumstances or there was an abuse of sentencing discretion to warrant a reduction of defendant's sentence in the interest of justice. Despite his young age of 19, defendant shot the victim at close range without justifiable provocation and continued to shoot him as he fled on a crowded residential street, fully supporting the imposition of the maximum sentence, and nothing in defendant's background convinces us to exercise leniency by reducing his sentence. To the extent that defendant challenges the amount of restitution as lacking sufficient support in the record, he did not request a hearing or otherwise challenge the amount of restitution (or any component of it) during the sentencing proceeding and, thus, these claims are unpreserved (*see People v Horne*, 97 NY2d 404, 414 n 3 [2002]; *People v Callahan*, 80 NY2d 273, 281 [1992]; *People v Melino*, 16 AD3d 908, 911 [2005], *lv denied* 5 NY3d 791 [2005]; *cf. People v Consalvo*, 89 NY2d 140, 146 [1996]). Also, defendant never raised the issue at sentencing concerning his ability to pay restitution and thus his claims of error are unpreserved (*see People v Aliseo*, 23 AD3d 670, 671 [2005]; *cf. People v Stone*, 307 AD2d 387, 389 [2003], *lv denied* 100 NY2d 645 [2003]).

Mercure, J.P., Peters, Rose and Kane, JJ., concur. Ordered that the judgment is affirmed.