(October 19, 2006)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE FACCIO, Appellant. [822 NYS2d 329]—

Kane, J. Appeal from a judgment of the County Court of Greene County (Pulver, Jr., J.), rendered April 23, 2002, upon a verdict convicting defendant of the crime of conspiracy in the second degree.

Defendant, Isaac Torres, Hector DeJesus, Daniel Rodriguez and the victim, all members of the Latin Kings gang, drove to a remote wooded area where Rodriguez executed the victim by firing a single gunshot to his head. Codefendant Daniel Faccio, defendant's twin brother and the purported leader of the Latin Kings gang for upstate New York, allegedly ordered this murder. In a separate trial, a jury convicted Rodriguez of murder in the second degree and criminal possession of a weapon. Torres

pleaded guilty to manslaughter in the first degree in exchange for a recommended 10-year sentence, conditioned upon his truthful testimony at defendant's and the codefendant's joint trial. A jury acquitted the codefendant of all charges, acquitted defendant of murder in the second degree and criminal possession of a weapon in the second degree, and convicted defendant of conspiracy in the second degree. Defendant appeals.

County Court did not err in permitting proof of defendant's gang membership. Evidence regarding the gang's membership, structure and some of its activities was inextricably interwoven with the charged crimes, provided a necessary background for the conspiracy and shooting, explained the relationships of the individuals involved and explained the motives and intent of the conspirators (see People v Williams, 28 AD3d 1005, 1008 [2006]; People v Ramirez, 23 AD3d 500, 501 [2005], lv denied 6 NY3d 817 [2006]; People v Washington, 9 AD3d 499, 501 [2004], lv denied 3 NY3d 682 [2004]). The probative value of this gang evidence outweighed the prejudice, and the court delivered adequate instructions to the jury regarding the proper use of this information (see People v Oliver, 19 AD3d 512, 513 [2005], lv denied 5 NY3d 808 [2005]).

County Court properly denied defendant's motions to dismiss the indictment because the accomplice testimony was adequately corroborated. While Torres, who was charged in the same indictment as defendant, was an accomplice as a matter of law, the court submitted to the jury the factual question of whether DeJesus was an accomplice. This was proper since different inferences regarding his complicity could be drawn from the evidence (see People v Caban, 5 NY3d 143, 152-153 [2005]; People v Player, 17 AD3d 701, 702 [2005], lv denied 5 NY3d 793 [2005]).

The nonaccomplice evidence here provided sufficient confirmatory information to connect defendant with the conspiracy and murder so as to corroborate Torres' and DeJesus' testimony. Numerous witnesses placed defendant at the codefendant's house on the day of the shooting, at a time when Torres said the conspirators were discussing obtaining a weapon and shooting the victim. Several witnesses saw Torres and Rodriguez leave in a white car prior to DeJesus and the victim leaving in a black Dodge Intrepid driven by defendant. The owner of the Intrepid testified that she loaned the car to defendant at about the time of the murder and that he returned with the car approximately 20 minutes later. Police measurement of the time required to travel the route to Torres' house, the murder scene, and back to the codefendant's house showed that it took just over 20 minutes. Around the time of the murder, a disinterested

witness saw a black Intrepid, carrying four or five dark-skinned people, driving and then backing up on the dirt road where the body was found. Dust and dirt on the Intrepid linked the car to the dirt road where the murder took place. Tire tread impressions at the murder scene were consistent with the type of tires on the Intrepid that defendant was driving. The victim's and defendant's fingerprints were matched to prints recovered from the Intrepid. These facts were consistent with testimony given by Torres and DeJesus. Even if the jury found DeJesus to be an accomplice, this nonaccomplice evidence provided sufficient corroboration of the accomplice testimony to submit the matter to the jury, and to support a conviction for conspiracy in the second degree (*see People v Caban, supra* at 155; *People v Breland*, 83 NY2d 286, 293 [1994]; *People v Cross*, 25 AD3d 1020, 1022 [2006]; *People v Walton*, 16 AD3d 903, 904 [2005], *lv denied* 5 NY3d 796 [2005]; *see also* CPL 60.22 [1]).

To convict defendant of conspiracy in the second degree, the jury was required to find that he "agree[d] with one or more persons to engage in or cause the performance of [murder in the second degree]," and that one of the conspirators committed an overt act in furtherance of the conspiracy (Penal Law §§ 105.15, 105.20). Torres' and Rodriguez' retrieval of the gun constituted an overt act in furtherance of the conspiracy, as did defendant's actions in driving the victim to a previously designated remote area. Torres testified that Rodriguez informed him that the codefendant ordered them to kill the victim. Witnesses also observed private discussions involving defendant, the codefendant, and other conspirators in the hours leading up to the murder. Defendant's actions in creating a ruse to lead the victim to the remote area is indicative of his mental state, supporting an intent to agree to the commission of the murder (*see* Penal Law § 125.25 [1]). Considering the accomplice testimony and corroborating nonaccomplice evidence, a valid line of reasoning and permissible inferences could lead rational persons to the conclusion reached by this jury (*see People v Bleakley*, 69 NY2d 490, 495 [1987]; *People v Haight*, 19 AD3d 714, 715 [2005], *lv denied* 5 NY3d 806 [2005]).

The verdict is not repugnant. To root out any inherently self-contradictory verdicts, this Court must review the essential elements of each count as charged to the jury to determine whether the defendant was "convicted of an offense containing an essential element that the jury has found the defendant did not commit" (*People v Trappier*, 87 NY2d 55, 58 [1995]; *see People v Tucker*, 55 NY2d 1, 7-8 [1981]; *People v Hurteau*, 19 AD3d 878, 881 [2005], *lv denied* 5 NY3d 806 [2005]). The conspiracy in the

second degree count required only that defendant intend the commission of a class A felony and "agrees with one or more persons to engage in or cause the performance of" conduct constituting such felony (Penal Law § 105.15). As charged to the jury, accessorial liability for the murder required that defendant intended Rodriguez to cause the victim's death and solicited, requested, commanded, importuned or intentionally aided Rodriguez to cause the victim's death (*see* Penal Law § 20.00). Given the accessorial nature of the murder charge, the verdict here was not repugnant. "Conduct that will support a conviction for conspiracy will not perforce give rise to accessorial liability" (*People v McGee*, 49 NY2d 48, 57 [1979] [citation omitted]). A rational jury could have concluded that, although defendant had the requisite intent for both the murder and conspiracy counts, the proof was insufficient to establish that he solicited, requested, commanded, importuned or intentionally aided Rodriguez to kill the victim, but sufficient to establish that he agreed with some of the others to cause the victim's death and one of the conspirators committed an overt act in furtherance of the conspiracy.

Defendant's remaining contentions have been reviewed and found to be without merit.

Crew III, J.P., Carpinello, Mugglin and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.