■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEITH COLLAZO, Appellant. [844 NYS2d 509]—

Cardona, P.J. Appeal from a judgment of the County Court of Rensselaer County (Czajka, J.), rendered February 13, 2004, upon a verdict convicting defendant of the crimes of attempted murder in the second degree, kidnapping in the second degree, robbery in the first degree (two counts), criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree.

Defendant first contends that his convictions for attempted murder in the second degree, kidnapping in the second degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree are against the weight of the evidence. We do not agree. The proof at trial showed that on September 23, 2002 in the City of Troy, Rensselaer County, defendant, along with his cousin, Samuel Calderon, who was a fellow gang member, enticed Charles McIntyre into a Honda by claiming that they wanted to buy drugs from him. In the Honda, Calderon held McIntyre at gunpoint while Calderon and defendant tried to ascertain from him the whereabouts of a man known as James, who had previously shot defendant in the hand. After McIntyre claimed that he did not know, he was struck by defendant while Calderon continued to hold him at gunpoint. Calderon and defendant also forced McIntyre to empty his pockets.

McIntyre then received a call from his friend Timothy Scott and, at the direction of defendant and Calderon, McIntyre instructed Scott to meet him in a nearby alleyway. There, Calderon exited the Honda and fired multiple shots at Scott's car, including a shot that penetrated the windshield. Scott escaped by speeding backwards down the alleyway away from Calderon. When Calderon re-entered the Honda and stated that he thought he had hit Scott, defendant gave him a "high-five." McIntyre was then driven to the City of Albany, where he showed Calderon and defendant the location where he had last seen James, however, he was no longer there. Thereafter, McIntyre was driven back to Troy, where the Honda was eventually stopped by the police. Viewing the evidence in a neutral light and deferring to the jury's credibility determinations, we find that the weight of the evidence established that defendant, with the requisite mental state, acted in concert with and intentionally aided Calderon in the commission of the charged

crimes (*see* Penal Law § 20.00; *People v Whatley*, 69 NY2d 784, 785 [1987]; *People v Rosado*, 26 AD3d 532, 533 [2006], *lv denied* 7 NY3d 762 [2006]; *People v McDonald*, 257 AD2d 695, 695-696 [1999], *lv denied* 93 NY2d 876 [1999]).

Defendant's further contention that his kidnapping conviction is precluded under the merger doctrine lacks merit, since the restraint of McIntyre was more than "a minimal intrusion necessary and integral to [the other] crime[s]" (*People v Gonzalez*, 80 NY2d 146, 153 [1992]; *accord People v Rosado*, 26 AD3d at 533). Indeed, the evidence establishes that McIntyre was kidnapped for the primary purpose of locating James, a conclusion which is supported by the fact that, even after they had robbed McIntyre and then used him to lure Scott to their location, defendant and Calderon continued to detain McIntyre, directed him to guide them to where he had last seen James, and then transported him back to Troy. In total, Calderon and defendant detained McIntyre for more than two hours. Thus, the kidnapping constituted "a crime in itself" (*People v Gonzalez*, 80 NY2d at 153; *see People v Howard*, 305 AD2d 869, 871 [2003], *lv denied* 100 NY2d 583 [2003]).

We also find no merit in defendant's contention that the introduction of evidence of his gang membership constituted reversible error. Such evidence provided a necessary background for the charged crimes and also explained the relationship between defendant and his codefendant as members of the same gang, as well as their relationship to James and Scott, who were apparently associated with a rival gang (*see People v Faccio*, 33 AD3d 1041, 1042 [2006], *lv denied* 8 NY3d 845 [2007]; *People v Oliver*, 19 AD3d 512, 512-513 [2005], *lv denied* 5 NY3d 808 [2005]). Moreover, any potential prejudice to defendant was alleviated by County Court's repeated instructions to the jury regarding the proper use of the information (*see People v Faccio*, 33 AD3d at 1042; *People v Oliver*, 19 AD3d at 513).

Additionally, defendant's arguments that the People improperly commented on his pretrial silence and County Court failed to properly charge the jury regarding the voluntariness of his statement are unpreserved and do not warrant our intervention in the interest of justice (*see People v Miles*, 36 AD3d 1021, 1023 [2007], *lv denied* 8 NY3d 988 [2007]; *People v Esposito*, 191 AD2d 746, 748-749 [1993], *lv denied* 81 NY2d 885 [1993]). However, we are persuaded that defendant's 50-year aggregate prison sentence is harsh and excessive in light of, among other things, the circumstances of the crimes and the more lenient seven-year prison sentence imposed upon Calderon, who was the principal actor in these crimes (*see People v Robinson*, 258

AD2d 817, 818 [1999], *lv denied* 93 NY2d 978 [1999]). Accordingly, we find it appropriate to reduce defendant's sentence in the interest of justice by directing that the 25-year sentences imposed for the attempted murder, robbery and kidnapping counts be reduced to 15 years, with all sentences to run concurrently.

Carpinello, Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the judgment is modified, as a matter of discretion in the interest of justice, by reducing the sentences imposed under counts 2, 4, 6 and 8 of the indictment to 15 years for each conviction, with all sentences imposed to run concurrently to one another, and, as so modified, affirmed.