■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DYJUAN TATRO, Appellant. [862 NYS2d 154]—

Peters, J. Appeal from a judgment of the Supreme Court (Mc-Donough, J.), rendered December 18, 2006 in Albany County, upon a verdict convicting defendant of two counts of the crime of assault in the second degree.

At approximately 2:30 A.M. on February 17, 2006, Andre Blakemore, Dushan Wilson and another individual were in the vicinity of 301 Washington Avenue in the City of Albany when defendant approached them, pulled out a weapon and shot Blakemore and Wilson as they fled. While being treated at a hospital for their gunshot wounds, Blakemore and Wilson were interviewed by detectives and Blakemore provided information leading the police to believe that defendant was involved in the shooting. Detectives then questioned defendant regarding both an incident that occurred three days earlier, in which he was the victim of a shooting and suffered gunshot wounds, and the shooting of Blakemore and Wilson. Defendant stated that when Blakemore and Wilson were shot, he was at home—and had been the entire night—and claimed that he had a telephone conversation with a friend, Quandesha Irving, sometime between 1:30 A.M. and 2:30 A.M. on the morning of the shooting.

After defendant was indicted for the crimes of attempted murder in the second degree (two counts), assault in the first degree (two counts), assault in the second degree (two counts) and criminal use of a firearm in the first degree, he moved to dismiss the indictment, alleging prosecutorial misconduct during the grand jury proceedings. County Court (Breslin, J.) denied the

motion and, following a jury trial, defendant was convicted of assault in the second degree (two counts) and criminal use of a firearm in the first degree. At sentencing, Supreme Court set aside defendant's conviction for criminal use of a firearm in the first degree and sentenced him to two consecutive prison terms of seven years. This appeal ensued.

Defendant initially argues that County Court erred in denying his motion to dismiss the indictment based upon alleged prosecutorial misconduct before the grand jury. Because dismissal of an indictment pursuant to CPL 210.35 is a drastic and exceptional remedy, it should be limited to only "those instances where prosecutorial wrongdoing, fraudulent conduct or errors potentially prejudice the ultimate decision reached by the [g]rand [j]ury" (*People v Huston*, 88 NY2d 400, 409 [1996]; *see People v Ramos*, 48 AD3d 984, 985 [2008]; *People v Mujahid*, 45 AD3d 1184, 1185 [2007], *lv denied* 10 NY3d 814 [2008]). "The likelihood of prejudice turns on the particular facts of each case, including the weight and nature of the admissible proof adduced to support the indictment and the degree of inappropriate prosecutorial influence or bias" (*People v Huston*, 88 NY2d at 409; *see People v Moffitt*, 20 AD3d 687, 688 [2005], *lv denied* 5 NY3d 854 [2005]).

Here, Blakemore unequivocally testified before the grand jury that defendant was the individual who confronted Wilson and him and fired shots at them, explaining that he had "no problems" identifying defendant due to the lighting conditions on Washington Avenue and his familiarity with defendant for years prior to the incident. Defendant testified to the contrary, asserting that he had not left his home on the night of the shooting and that his two sisters, as well as Shameeka Moore, another individual who resided at the home, were present throughout the night. In support of his alibi defense, defendant further testified that he had a telephone conversation with Irving at some point between 1:30 A.M. and 2:30 A.M. on the morning of the shooting, but could not recall whether he received the call on his home telephone or his sister's cellular telephone. The prosecutor then assertively questioned defendant in a manner which implied that she was aware of documentary evidence that contradicted defendant's alibi testimony concerning the conversation with Irving. There is no indication in the record, however, that the prosecutor was actually in possession of the call records for defendant's sister's cellular telephone at the time of the grand jury proceedings. Notably, defense counsel thereafter obtained the records for the cellular telephone which, in fact, revealed that a call was received at 1:39 A.M. on the morning of the shooting.

While we strongly disapprove of the prosecutor's conduct, " '[i]solated instances of misconduct will not necessarily impair the integrity of the [g]rand [j]ury proceedings or lead to the possibility of prejudice' " (*People v Alicea*, 276 AD2d 915, 916 [2000], *lv denied* 96 NY2d 780 [2001], quoting *People v Huston*, 88 NY2d at 409; *see People v Spencer*, 289 AD2d 877, 878 [2001], *lv denied* 98 NY2d 655 [2002]). Here, there was no overall pattern of misconduct which permeated the proceedings; rather, the challenged conduct consists of a brief, isolated line of questioning by the prosecutor (*compare People v Huston*, 88 NY2d at 410). Moreover, defendant provided the grand jury with a full narrative of his own version of the events before he was cross-examined (*see People v Alicea*, 276 AD2d at 916; *compare People v Miller*, 144 AD2d 94, 97 [1989]), and the grand jury heard the testimony of defendant's three alibi witnesses, each of whom corroborated defendant's testimony that he had been home the entire night of the shooting (*see generally People v Lancaster*, 69 NY2d 20, 26 [1986], *cert denied* 480 US 922 [1987]). Since Blakemore positively identified defendant as the assailant, the evidence before the grand jury was legally sufficient to establish a prima facie case that defendant had committed the shootings (*see* CPL 190.65 [1]; *People v Jennings*, 69 NY2d 103, 114 [1986]; *People v Spencer*, 289 AD2d at 879; *see also People v Perry*, 187 AD2d 678, 678 [1992], *lv denied* 81 NY2d 891 [1993]) and, therefore, the information in the call records would not have eliminated a "needless or unfounded prosecution" (*People v Valles*, 62 NY2d 36, 38 [1984]; *see People v Gudz*, 18 AD3d 11, 14 [2005]). Accordingly, County Court properly denied the motion to dismiss.

Next, we reject defendant's contention that the introduction of evidence of his gang affiliation constituted reversible error. The People elicited testimony that, when questioned about the shooting in which he was the victim, defendant informed detectives that he believed he was targeted as a result of an "uptown-downtown problem" and that he "told his boys that they were not to retaliate." Blakemore further testified as to local gangs in Albany, stating that both he and Wilson were from "uptown" and they associated with the "Jungle Junkies," while defendant was from "downtown," and that these neighborhoods had been fighting since he was young. Additionally, a gang expert* explained that there is an ongoing problem in Albany between

---

* Inasmuch as the gang expert testified in detail to his training and years of experience investigating gang-related crime in Albany, basic background about gangs, the geographic areas ascribed to the local gangs and the composition of gang activity in Albany, we find unavailing defendant's contention that the

"what is known as uptown and downtown[,] or Jungle Junkies and OGK" gangs, whose adversarial relationship often escalates from territorial disputes to violence. Based on his direct contact with defendant, the expert testified that defendant lived in the downtown neighborhood and that he was "affiliated with the downtown set known as OGK." This testimony was sufficient to provide a connection between defendant's gang affiliation and the subject shooting (*see People v Edwards*, 295 AD2d 270, 271 [2002], *lv denied* 99 NY2d 557 [2002]). Further, the testimony regarding defendant's gang affiliation provided a necessary background for the subject shooting, as it put into context the testimony regarding the shooting of defendant which occurred three days earlier, and explained the relationship between defendant and the victims as well as defendant's motive and intent for the subject shooting (*see People v Collazo*, 45 AD3d 899, 901 [2007], *lv denied* 9 NY3d 1032 [2008]; *People v Faccio*, 33 AD3d 1041, 1042 [2006], *lv denied* 8 NY3d 845 [2007]; *People v Williams*, 28 AD3d 1005, 1008 [2006], *lv denied* 7 NY3d 819 [2006]). The probative value of this evidence outweighed its prejudice and, moreover, any potential prejudice to defendant was alleviated by Supreme Court's appropriate instructions to the jury (*see People v Collazo*, 45 AD3d at 901; *People v Faccio*, 33 AD3d at 1042).

We find merit to defendant's assertion that Supreme Court erred by allowing evidence that, approximately three years prior to the subject shooting, he displayed a shotgun to Blakemore following a fight between a number of individuals. The court permitted such testimony, under *Molineux*, on the ground that the prior incident was relevant to demonstrate Blakemore's familiarity with and ability to identify defendant. However, inasmuch as the issue of identity was established by Blakemore's testimony that he was familiar with defendant, seeing him every few weeks or so, and his unequivocal testimony identifying defendant as the shooter, such evidence was cumulative as to this issue (*see generally People v Ely*, 68 NY2d 520, 530 [1986]), and the slight probative value of such testimony was outweighed by its prejudicial effect (*see People v Austin*, 13 AD3d 1196, 1197 [2004], *lv denied* 5 NY3d 785 [2005]). Nonetheless, we conclude that the error was harmless since there was no significant probability that defendant would have been acquitted had this testimony not been admitted (*see People v White*, 41 AD3d 1036, 1038 [2007], *lv denied* 9 NY3d 965 [2007]; *People v Roberts*, 12 AD3d 835, 837 [2004], *lv denied* 4 NY3d 802 [2005]).

---

expert was not competent to provide such testimony (*see People v Cherry*, 46 AD3d 1234, 1237 [2007], *lv denied* 10 NY3d 839 [2008]).

We are also unpersuaded that the manner by which Supreme Court dealt with Wilson's invocation of his 5th Amendment privilege against self-incrimination deprived defendant of his constitutional rights to due process and to present and confront witnesses. At the time of trial, Supreme Court was notified that criminal charges related to the instant incident had been brought against Wilson in connection with the murder of Elleek Williams and that Wilson intended to exercise his 5th Amendment privilege if called as a witness. Thereafter, Wilson appeared at trial accompanied by counsel and was questioned by the People outside the presence of the jury and while under oath. Wilson invoked his 5th Amendment privilege in response to each question and unequivocally indicated to the court that he would refuse to answer any questions concerning the subject shooting, even if he were to be granted immunity. Over defendant's objections, the court dismissed Wilson.

We reject defendant's assertion that Supreme Court erred and that the proper procedure would have been to compel Wilson to take the witness stand and exercise his privilege before the jury. It is within the discretion of the trial court whether to permit the defense to place a witness on the stand and require him or her to assert his or her privilege in the presence of the jury (*see People v Thomas*, 51 NY2d 466, 472 [1980]; *People v Bradford*, 300 AD2d 685, 686 [2002], *lv denied* 99 NY2d 612 [2003]; *People v Starr*, 213 AD2d 758, 759 [1995], *lv denied* 85 NY2d 980 [1995]). Indeed, there is neither a constitutional right to obtain the attendance of a witness who is unavailable nor a requirement that a defendant's conviction be set aside where the sought after "testimony is unavailable because the witness takes refuge in his [or her] constitutional privilege against self incrimination" (*People v Sapia*, 41 NY2d 160, 165 [1976], *cert denied* 434 US 823 [1977]). Nor did the prosecutor abuse her discretion in declining to request that immunity be conferred upon Wilson (*see* CPL 50.20 [2] [b]; 50.30; *People v Owens*, 63 NY2d 824, 825-826 [1984]), as the failure to grant immunity did not deprive defendant of all witnesses who could provide this alleged exculpatory testimony (*see People v Adams*, 53 NY2d 241, 247-248 [1981]; *compare People v Shapiro*, 50 NY2d 747, 759-760 [1980]). As a final matter, inasmuch as Wilson was an unavailable witness, we find no fault with Supreme Court's refusal to provide a missing witness charge (*see People v Savinon*, 100 NY2d 192, 198-199 [2003]; *People v McBean*, 32 AD3d 549, 552 n 2 [2006], *lv denied* 7 NY3d 927 [2006]; *People v Davis*, 18 AD3d 1016, 1019 [2005], *lv denied* 5 NY3d 805 [2005]) and are of the view that the court correctly gave a neutral instruction regarding Wilson's unavailability as a

witness in order to prevent the jury from speculating to the detriment of either the People or defendant (*see People v Adams,* 53 NY2d at 248; *People v Thomas,* 51 NY2d at 473-474).

We briefly address defendant's remaining contentions. We perceive no error in Supreme Court's decision to give a missing witness charge with respect to two of defendant's alibi witnesses, Gianna Tatro and Moore, who were purportedly at defendant's residence on the night of the incident. The court providently exercised its discretion in determining that these witnesses were knowledgeable about a material issue and could have provided noncumulative testimony favorable to defendant's alibi defense (*see People v Gonzalez,* 68 NY2d 424, 427 [1986]; *People v Rogers,* 247 AD2d 765, 767 [1998], *lv denied* 91 NY2d 977 [1998]). Finally, despite defendant's youth, given the circumstances of the crimes at hand and defendant's criminal history, which includes a prior felony, we conclude that a reduction in defendant's sentence is not warranted (*see People v Demand,* 268 AD2d 901, 904-905 [2000], *lv denied* 95 NY2d 795 [2000]; *People v Dolphy,* 257 AD2d 681, 685 [1999], *lv denied* 93 NY2d 872 [1999]).

Cardona, P.J., Spain, Carpinello and Stein, JJ., concur. Ordered that the judgment is affirmed.