■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CELENE R. THOMPSON, Appellant. [912 NYS2d 326]—

Spain, J.P. Appeal from a judgment of the County Court of Broome County (Sherman, J.), entered April 13, 2009, upon a verdict convicting defendant of the crime of assault in the second degree.

In the early morning hours of July 16, 2007, defendant and his former girlfriend (hereinafter the victim) arrived at a hotel room in the Town of Union, Broome County, and the victim got into bed while defendant spoke on his cell phone in the bathroom. Shortly after defendant exited the bathroom, a masked intruder entered the room and slashed the victim multiple times on her face, head and body, threatened to kill her and then fled. According to the victim, defendant was not harmed or threatened during the attack and did not intervene. She called 911 around 6:10 A.M. while defendant drove her to

the hospital, where she was treated, requiring over 40 stitches for her injuries. Although his face was concealed, the victim identified the assailant—based upon his build, gait and voice—as codefendant Cedric Dozier, who she had known for eight years and with whom she recently had a dispute over money. When cell phone records connected defendant and Dozier, they were jointly indicted as accomplices for assault in the first degree and second degree. After a jury trial, defendant was convicted of assault in the second degree* and sentenced to five years in prison and five years of postrelease supervision. Defendant appeals, and we affirm.

Initially, defendant challenges the weight of the evidence linking him as an accomplice to Dozier and establishing his shared intent to cause serious injury to the victim. Upon review of the credible evidence, while a different verdict would not have been unreasonable, our review of the probative value of the conflicting testimony and of the relative strengths of the conflicting inferences that may be drawn from the testimony persuades us that the jury's verdict is supported by the weight of credible evidence (see People v Bleakley, 69 NY2d 490, 495 [1987]; see also People v Romero, 7 NY3d 633, 643-644 [2006]).

The victim testified that on July 14, 2007, two days before the attack, she met up with Dozier at a local bar around 2:00 A.M. and later called him via a cell phone number that he gave to her and met him at a hotel, where they stayed until she left around 8:00 A.M. Within hours, Dozier and a friend confronted the victim at home, accusing her of stealing $600 from Dozier at the hotel. Dozier threatened her, police were called and Dozier refused to cooperate, telling police he would "handle the problem in his own way." The responding police officer described him as a black male, six feet, two inches to six feet, four inches and 260-270 pounds, and identified him at trial. In the early morning of July 16, 2007, defendant repeatedly called the victim's house and cell phone number asking her to come with him to a hotel because he had unspecified business to take care of the next morning; during the final call, defendant indicated that he was outside of her house and she agreed to go with him, arriving at the hotel around 5:00 A.M. The victim laid down under the covers to sleep, while defendant went into the bathroom for about 15 minutes, during which time she could hear him talking on his cell phone but could not hear with whom he was speaking, although at one point she heard a woman's voice. Defendant then came out of the bathroom and sat on the adjacent bed talking with her, at which time a masked man she

---

* Dozier was convicted as charged.

recognized to be Dozier entered and attacked only her and threatened to kill her, never speaking to or harming defendant, who moved back on the bed and remained silent. The assailant took no property and fled.

There was no dispute that defendant was using a cell phone and number belonging to his cousin, a fact he admitted. The prepaid cell phone linked to Dozier, which the victim had called two days earlier to speak with Dozier, had been obtained in March 2007 using an apparent alias and the e-mail and unlisted phone number of a female friend of Dozier, who testified that Dozier possessed that information and that she never used that cell phone. Cell phone records from the cell phone numbers used by defendant and Dozier were reviewed by a State Police investigator and admitted into evidence, establishing that defendant and Dozier placed eight separate calls to one another between 4:12 A.M. and 6:24 A.M. the morning of the attack, revealing their ongoing communication during the time immediately preceding and right after the attack. An investigator for the People reviewed the records and testified that there were 64 telephone calls made between the cell phone numbers of defendant, Dozier and the victim in the five days preceding the attack.

Contrary to defendant's contentions, the victim's testimony was not unworthy of belief, despite her criminal history, and was supported by the cell phone records. In our view, neither the fact that defendant's motive and prior relationship with Dozier were not known nor the lack of direct proof undermined the jury's verdict, which was based in large measure on its firsthand ability to assess the victim's credibility, to which we accord great deference (*see People v Bleakley*, 69 NY2d at 495; *People v Davis*, 72 AD3d 1274, 1275-1276 [2010]). Weighing all of the testimony and evidence and the inferences to be drawn therefrom, the jury rationally concluded that defendant arranged with Dozier to bring the victim to a hotel and leave the door unlocked; defendant then advised Dozier of their location, thereby intentionally aiding Dozier's attack while sharing his intent, readily inferable from defendant's conduct and the surrounding circumstance, to cause her serious physical injury (*see* Penal Law §§ 20.00, 125.05 [1]; *see also People v Kaplan*, 76 NY2d 140, 144 [1990]; *People v Bush*, 75 AD3d 917, 918 [2010]; *People v Valderrama*, 285 AD2d 902, 903 [2001], *lv denied* 97 NY2d 659 [2001]). Thus, this claim is rejected.

We are also unpersuaded by defendant's argument that County Court's denial of his motion for a severance was an abuse of discretion. Defendant does not dispute that joinder was

proper (*see* CPL 200.40 [1]) and, given that both defendants were charged with acting in concert and proof against them was supplied by the same evidence, the public policy favoring joinder is particularly strong (*see People v Cardwell*, 78 NY2d 996, 997 [1991]; *People v Mahboubian*, 74 NY2d 174, 183 [1989]). "[O]nly the most cogent reasons warrant a severance" (*People v Bornholdt*, 33 NY2d 75, 87 [1973], *cert denied* 416 US 905 [1974]). We reject defendant's claim that he was prejudiced by the testimony regarding Dozier's dispute with the victim two days before the attack, as that testimony established the basis for the victim's ability to identify Dozier as the assailant and his cell phone number, which would have been admissible at trial had defendant been tried separately. While that evidence also established Dozier's motive, it was not used to implicate defendant in that dispute or to suggest his motive, which was not explained at trial. Moreover, both defenses were predicated on their assertions that they did not know one another and had not participated in cell phone calls to the other or in the attack. As defendant failed to demonstrate that their defenses were "antagonistic, mutually exclusive or irreconcilable" (*People v Melendez*, 285 AD2d 819, 822 [2001], *lv denied* 97 NY2d 731 [2002]) or that he suffered undue prejudice (*see* CPL 200.40 [1]; *People v Mahboubian*, 74 NY2d at 184), we discern no abuse of discretion in denying his motion for a severance.

Kavanagh, Stein, McCarthy and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.