Supreme Court, Appellate Division
Third Judicial Department

Decided and Entered:   January 8, 2015          105516
                                                106349
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                MEMORANDUM AND ORDER

LYDIA ANN SALCE,
                        Appellant.
_____


Calendar Date:   November 13, 2014

Before:   Peters, P.J., Lahtinen, Garry, Rose and Egan Jr., JJ.

                        _____


        Paul J. Connolly, Delmar, for appellant.

        Karen A. Heggen, District Attorney, Ballston Spa (Michele
Schettino of counsel), for respondent.

                        _____


Lahtinen, J.

        Appeals (1) from a judgment of the County Court of Saratoga
County (Scarano, J.), rendered August 31, 2012, upon a verdict
convicting defendant of the crimes of attempted murder in the
second degree and assault in the first degree (two counts), and
(2) from an order of said court, entered October 2, 2013, which
denied defendant's motion to settle the record on appeal.

        In the early morning hours of August 11, 2011, defendant
and her husband, Michael McKee, engaged in a violent physical
altercation during which, among other things, defendant was
punched in the face and McKee was repeatedly stabbed.  Markedly
different versions of events were given by defendant and McKee.
Briefly, defendant claimed that an intoxicated McKee instigated

the altercation by beating her and holding a knife to her throat, and that she acted in self-defense fearing he intended to kill her. McKee, on the other hand, related that, as he arrived home late after drinking with his biker friends, defendant stabbed him in the back while yelling, "you're done"; he struck her in the face with his fist in an attempt to defend himself but she kept stabbing him about his body as he collapsed on the floor.

Defendant was indicted for attempted murder in the second degree, two counts of assault in the first degree and two counts of assault in the second degree. A jury found her guilty of attempted murder in the second degree and the two counts of assault in the first degree. She was sentenced to concurrent prison terms of 16 years on all three counts plus five years of postrelease supervision. County Court denied defendant's motion to settle the record on appeal to include McKee's employment records. Defendant appeals from the judgment of conviction and County Court's denial of her motion to settle the record.

Defendant argues that the verdict was not supported by legally sufficient evidence and was against the weight of the evidence. In legal sufficiency review, we "determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Bleakley, 69 NY2d 490, 495 [1987] [citation omitted]; see People v Danielson, 9 NY3d 342, 349 [2007]). The People elicited testimony from friends and coworkers of defendant reflecting that she had complained repeatedly about the deterioration of her short marriage to McKee stemming from the amount of time that he was spending with members of a motorcycle club known as "Prisoners of Fate," where McKee hoped to become a member. She had locked him out of the house and called police a week earlier. On the morning of August 10, 2011, when she arrived at work, she told a coworker that she had made an appointment with a psychiatrist and, if she did not speak to someone soon, she was "going to kill" McKee. That evening, a biker friend of McKee gave him a ride home and observed defendant run out of the house screaming obscenity-laced

comments at them and acting in a manner described as violent and aggressive as she told McKee to leave. McKee testified that he briefly left with his friend, but returned and entered the house during the early morning hours of August 11, 2011. After a verbal altercation, he reportedly turned to leave the room when defendant stabbed him in the back screaming, "you're done." He punched her in an effort to defend himself, but she continued to stab him using a KA-BAR combat knife with a four to five-inch blade. After washing her hands, defendant called 911. Emergency responders found McKee in a large pool of blood gasping for air with shallow breaths. He was transported to the hospital where the emergency room doctor characterized him as in critical condition. He had 14 cut and stab wounds, suffered bilateral pneumothorax and remained hospitalized for a week. Photographs of his various scars as a result of the incident were received into evidence.

Defendant's version of events was included in a detailed statement that she gave to police, which was received into evidence. According to her, McKee came home intoxicated and threw a glass jar at her, grabbed her hair, jerked her head back and held a knife to her throat. As he started hitting her, he apparently dropped the knife, which she picked up as she then began swinging wildly with both arms, apparently striking McKee several times with the knife. Defendant further elicited medical proof that McKee's back and chest wounds were no more than 1 to 1½ inches deep and her medical expert opined that McKee's injuries were not life threatening. Defendant contended that, if she had intended to kill McKee and stabbed him from behind as he claimed, the stab wound would have been much deeper. There was proof that shortly before the incident, defendant heard from a friend who was concerned about her being upset earlier in the day regarding McKee, and defendant responded by stating in a text message to the friend that she was "fine." In her 911 call, defendant stated that she and McKee had stabbed each other, and at all times told police that McKee had attacked her.

Viewing the extensive proof in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), there was legally sufficient evidence to support the convictions. As

regards the weight of the evidence, since a different verdict would not have been unreasonable, we "must, like the trier of fact below, 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony'" (People v Bleakley, 69 NY2d at 495, quoting People ex rel. MacCracken v Miller, 291 NY 55, 62 [1943]).  Conflicting proof was presented on key issues and the verdict turned in large part on credibility determinations.  We accord deference to "the factfinder's opportunity to view the witnesses, hear the testimony and observe demeanor" (People v Romero, 7 NY3d 633, 644 [2006] [internal quotation marks and citation omitted]).  After weighing the proof in the record and viewing the evidence in a neutral light, while giving deference to the jury's difficult credibility determinations, we are unpersuaded that the verdict was against the weight of the evidence.  Nor was it against the weight of the evidence, as separately argued by defendant, for the jury to reject defendant's justification defense (see People v Dale, 115 AD3d 1002, 1006 [2014]; People v Fisher, 89 AD3d 1135, 1137-1138 [2011], lv denied 18 NY3d 883 [2012]).

Defendant argues that County Court erred in not allowing her expert, a police officer with expertise in assaults and knives, to testify.  The admissibility of expert testimony rests primarily within the trial court's discretion in light of the particular facts and circumstances (see People v LeGrand, 8 NY3d 449, 455-456 [2007]; People v Cronin, 60 NY2d 430, 433 [1983]).  Significantly, here, as part of their proof, the People elicited testimony from police indicating that they relied on the extensive nature of McKee's wounds in believing his version and decided to charge defendant.  Defendant stated that her expert would have testified that the nature of defendant's injuries and McKee's wounds were not inconsistent with defensive action by defendant.  Given the sharply conflicting proof on this key factual issue at trial and the testimony by police regarding the issue on behalf of the People, defendant should have been

permitted to have her expert testify.[1]  We further note that, despite defendant's request, County Court gave a charge on the justification defense that was inconsistent with the holding in People v Jones (3 NY3d 491, 494 [2004] [expressly finding error where, as here, the trial court found it preferable "to avoid any confusion on the part of the jury by not mentioning the duty to retreat at all, as opposed to mentioning a general duty to retreat and then qualifying that duty by delineating the applicable home exception"]).  The combination of errors on a close and highly contested issue persuades us that the judgment of conviction must be reversed and defendant granted a new trial (see People v Hartman, 64 AD3d 1002, 1005 [2009], lv denied 13 NY3d 860 [2009]).

The remaining issues are academic, including the separate appeal from the order denying defendant's motion to settle the record on appeal.

Peters, P.J., Garry, Rose and Egan Jr., JJ., concur.


ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Saratoga County for a new trial.

ORDERED that the appeal from the order is dismissed, as academic.


ENTER:

Robert D. Mayberger
Clerk of the Court

---

[1]  We note that we are making no determination whether a demonstration prepared by the expert, which was set forth on a DVD, should have been shown to the jury since that demonstration may be subject to other relevant objections.