OPINION OF THE COURT
Pigott, J.
On May 30, 2008, defendant, driving eastbound on Whiskey Road in Suffolk County, entered the westbound lane and struck the vehicle of Robert and Mary Kelly head on, killing them both. At the time of the collision, defendant was 34 weeks’ pregnant. She was taken to a local hospital where, due to signs of fetal distress, she consented to an emergency cesarean section. Despite the best efforts of hospital personnel, the baby died six days later. An autopsy confirmed that the cause of death was due to injuries sustained in the accident.
Thirteen months later, defendant was indicted on three counts of manslaughter in the second degree (Penal Law § 125.15 [1]), one count of aggravated vehicular homicide (Penal Law § 125.14), and one count of operating a motor vehicle while under the combined influence of drugs or of alcohol and any drug or drugs (Vehicle and Traffic Law § 1192 [4-a]).[1] After the first jury failed to reach a unanimous verdict, the parties proceeded to a second trial on all counts.
*89 The People’s theory was that defendant was traveling in excess of 50 miles per hour in a 30 mile-per-hour zone and, while under the influence of a prescription drug and alcohol, struck the Kelly vehicle in the Kellys’ lane of traffic. As a result of the collision, defendant, who was not wearing a seat belt, struck the steering wheel, causing injury to her unborn fetus. The People’s argument at trial was that defendant’s reckless conduct not only resulted in the death of the Kellys, but also her six-day-old child.
Following deliberations, the jury returned a verdict finding the defendant not guilty on all counts except manslaughter in the second degree for the death of her child. The Appellate Division affirmed defendant’s conviction (113 AD3d 793 [2d Dept 2014]). A Judge of this Court granted defendant leave to appeal (23 NY3d 1063 [2014]). We now reverse.
The underlying facts and circumstances of this appeal are tragic to all parties involved. The sole issue that we reach on this appeal, however, is whether a woman can be convicted of manslaughter for reckless conduct that she engaged in while pregnant that caused injury to the fetus in útero where the child was born alive but died as a result of that injury days later (see People v Martinez, 81 NY2d 810 [1993] ).[2] We hold that it is evident from the statutory scheme that the legislature, in enacting Penal Law §§ 125.05 (1) and 125.15 (1), did not intend to hold pregnant women criminally responsible for conduct with respect to themselves and their unborn fetuses unless such conduct is done intentionally.
The issue is strictly one of statutory interpretation. As relevant here, “[a] person is guilty of manslaughter in the second degree when . . . [h]e [or she] recklessly causes the death of another person” (Penal Law § 125.15 [1]). Penal Law § 125.05 (1) provides that, when referring to the victim of a homicide, a person is “a human being who has been born and is alive.” The question is, did the legislature, through its enactment of the two statutory provisions, intend to hold pregnant women criminally responsible for engaging in reckless conduct against themselves and their unborn fetuses, such that they should be subject to criminal liability for prenatal conduct that *90 results in postnatal death? Under the current statutory scheme, the answer to this question is no.
This is a case of first impression. The legislature’s definition of the word “person,” when referring to a homicide victim, as “a human being who has been born and is alive,” is relatively broad. When it is read in conjunction with the manslaughter in the second degree provision at issue here, however, it is also ambiguous as to whether the legislature intended to criminalize a mother’s own reckless conduct directed at herself and, consequently, the fetus. Consideration of the entire statutory scheme is necessary in order to divine whether the legislature intended to criminalize such conduct.
Where the legislature has decided to criminalize a pregnant woman’s conduct towards her unborn fetus, it has clearly established statutory prohibitions against such conduct. In this regard, the legislature has made it a class B misdemeanor for a pregnant woman to “commit[ ] or submit! ] to an [unjustifiable] abortional act upon herself” (Penal Law § 125.50 [self-abortion in the second degree]).[3] According to Penal Law § 125.00, the crime of self-abortion in the second degree is not considered a “homicide.” Further, the legislature has determined that a woman who is pregnant for more than 24 weeks, and who commits or submits to an unjustifiable “abortional act” that causes her to miscarry, is guilty of a class A misdemeanor (Penal Law § 125.55), not a felony.
Both “self-abortion” statutes require the mens rea of intent, and, yet, the legislature has determined that the punishment for such intentional conduct is no greater than a misdemeanor. In contrast, the manslaughter in the second degree statute under which defendant was charged and convicted is a class C felony, and requires that the People prove that defendant acted with the mental state of “recklessness,” i.e., that she was “aware of and consciously disregard[ed] a substantial and unjustifiable risk” that a particular result would occur or circumstance existed (Penal Law § 15.05 [3]). We conclude that the legislature did not intend to impose greater punishment on *91 pregnant women for their alleged reckless conduct toward a fetus than for their intentional conduct. While both first- and second-degree manslaughter statutes have provisions referencing pregnant women, those references are only in the context of non-justifiable “abortional acts” resulting in the death of the mother (as opposed to the child) (see Penal Law §§ 125.20 [3] [manslaughter in the first degree]; 125.15 [2] [manslaughter in the second degree]).
Had the legislature intended to include pregnant women in the class of individuals who may be guilty of manslaughter in the second degree for reckless acts committed while pregnant, resulting in the eventual death of their child, it could clearly have done so. Moreover, had defendant’s fetus died in útero, then, plainly, defendant could not have been prosecuted under the manslaughter statute because the fetus would not have fallen under the definition of a “person” (Penal Law § 125.05 [1]; see People v Vercelletto, 135 Misc 2d 40 [Ulster County Ct 1987] [dismissing the count of vehicular manslaughter in the second degree against a defendant who struck a car being operated by a pregnant woman, resulting in a stillbirth, holding that the stillborn fetus was not a “person” under the statute]; People v Joseph, 130 Misc 2d 377 [Orange County Ct 1985] [dismissing the counts of criminally negligent homicide and vehicular manslaughter against defendant for causing the death of an unborn child]).[4]
The People concede that, had defendant not consented to the cesarean section with the result that the child be born alive, she would not have been prosecuted for manslaughter in the second degree. Thus, if we accorded the word “person” the interpretation advocated by the People, it would create a perverse incentive for a pregnant woman to refuse a cesarean section out of fear that if her baby is born alive she would face criminal charges for her alleged reckless conduct, jeopardizing the health of the woman and the unborn fetus. This is plainly not what the legislature intended when it enacted the definition of “person” under section 125.05 (1) or the manslaughter in the second degree offense as delineated in Penal Law § 125.15 (1). To interpret the statutory provisions otherwise would enlarge their criminal reach beyond what the legislature *92 intended (see People v Wood, 8 NY2d 48, 51 [1960] [providing that “(p)enal responsibility, unlike moral responsibility, cannot be extended beyond the fair scope of the statutory mandate”]).
The imposition of criminal liability upon pregnant women for acts committed against a fetus that is later born and subsequently dies as a result of injuries sustained while in útero should be clearly defined by the legislature, not the courts. It should also not be left to the whim of the prosecutor. Conceivably, one could find it “reckless” for a pregnant woman to disregard her obstetrician’s specific orders concerning bed rest; take prescription and/or illicit drugs; shovel a walkway; engage in a contact sport; carry groceries; or disregard dietary restrictions. Such conduct, if it resulted in premature birth and subsequent death of the child, could result in criminal liability for the mother. At present, such conduct, if it caused a stillbirth, would not result in criminal prosecution of the mother if the fetus died in útero. Any change in the law with regard to such matters would be within the province of the legislature.
Accordingly, the order of the Appellate Division should be reversed, and the remaining count of the indictment dismissed.

. Prior to defendant’s first trial, the defense successfully moved for the dismissal of the counts of operating a motor vehicle while using a mobile telephone, speeding, and endangering the welfare of a child, the last count *89 being dismissed because the court held that the crime did not apply to an unborn fetus (26 Misc 3d 1232[A], 2010 NY Slip Op 50348[U] [Sup Ct, Suffolk County 2010]).

. We have no occasion to reach the remaining issues raised by defendant.

. The Penal Law defines an “abortional act” as
“an act committed upon or with respect to a female, whether by another person or by the female herself, whether she is pregnant or not, whether directly upon her body or by the administering, taking or prescription of drugs or in any other manner, with intent to cause a miscarriage of such female” (Penal Law § 125.05 [2] [emphasis supplied]).

. These cases and the present case are distinguishable from those cases where a third party has assaulted a pregnant woman, resulting in the death of the child after its birth (see e.g. People v Hall, 158 AD2d 69 [1st Dept 1990], lv denied upon reconsideration 76 NY2d 1021 [1990]).