## Supreme Court, Appellate Division
## Third Judicial Department

Decided and Entered:  October 29, 2015                     105514
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                    MEMORANDUM AND ORDER

LUVADOLLAR GODALLAH,
                        Appellant.
_____

Calendar Date:   September 15, 2015

Before:  Peters, P.J., Lahtinen, McCarthy and Lynch, JJ.

_____

        M. Joe Landry, Schenectady, for appellant, and appellant
pro se.

        Robert M. Carney, District Attorney, Schenectady (Peter H.
Willis of counsel), for respondent.

_____

Lynch, J.

        Appeal from a judgment of the County Court of Schenectady
County (Drago, J.), rendered August 28, 2012, upon a verdict
convicting defendant of the crimes of assault in the second
degree (six counts), burglary in the first degree (six counts)
and endangering the welfare of a child.

        Defendant was charged in a 22-count indictment with various
crimes stemming from a home invasion that occurred on January 26,
2011 at an apartment located in the City of Schenectady,
Schenectady County.  Living in the apartment were Melissa
Columbus and her infant child, her brother, Brad Columbus, and
her boyfriend, Anthony Nieves.  During the home invasion, each of
the three adult residents were stabbed.  Melissa Columbus managed

to call 911 during the ordeal and when the police arrived, they discovered and arrested James Tedeschi, defendant's roommate. Defendant was picked up approximately three hours later. After a jury trial, defendant was found guilty of assault in the second degree (six counts), burglary in the first degree (six counts) and endangering the welfare of a child. The People submitted a persistent violent felony offender statement pursuant to CPL 400.20 (3). Thereafter, County Court sentenced defendant, as a persistent violent felony offender, to an aggregate prison term of 24 years to life. Defendant now appeals.

At trial, the evidence included testimony by Tedeschi, who was also charged but pleaded guilty to the charges in the indictment. Tedeschi testified that it was defendant's idea to go to the apartment to steal money and drugs. Tedeschi explained that to disguise themselves before entering the apartment, he wore a hooded sweatshirt, hat and ski mask and that defendant wore a "face thing[ ]" and "some big red sunglasses." Tedeschi testified that, once they were in the apartment, someone jumped on him and, as he was knocked to the floor, he observed defendant "strik[e] downwards" towards the person on top of him. Tedeschi testified that, as he got up from the floor, he saw blood "everywhere." Tedeschi identified certain voices in a police audio recording of the event as his and defendant's.

Melissa Columbus testified that at 4:54 a.m. on January 26, 2011, she was awakened by the sound of people in her apartment. She called for Nieves, who was sleeping in the room with her, urged him to get up, and then called the police. Nieves testified that he ran out of the room and jumped on one of the intruders. Melissa Columbus began screaming to wake Brad Columbus. She testified that there were two men in the apartment, one was white, the other was black, taller and dressed in black. The taller intruder came into her bedroom, grabbed her phone and began demanding to know where "the bread" was. She testified that he threw her into the dining room, where she could see Nieves and Brad Columbus on the floor, both covered in blood. When she got up to check on her child, the taller man stabbed her in the thigh. Melissa Columbus explained that as she was being stabbed, she noticed that the taller intruder was wearing a hat with a ski mask and a pair of sunglasses, and that he had a

"mole, a beauty mark [or] something" on his face.  She testified that when the police arrived, the taller man jumped out of the window.

Nieves testified that he noticed only that one of the two intruders was tall and "lanky."  Brad Columbus testified that he knew Tedeschi and that he had previously met a man named "Luvly" at Tedeschi's home, who was taller than both he and Tedeschi and who had two small tattoos below one eye.  On the night of the invasion, Brad Columbus pulled Tedeschi's mask off and recognized him.  He recalled that the taller man, who was wearing a mask and had a tattoo on his face, stabbed him in the leg and in the back of the head.  He also testified that the taller man was shouting and asking for "bread" and "weed."

Keith Lawyer, a police officer, testified that when he arrived at the apartment shortly after 6:00 a.m. on the morning of the incident, Melissa Columbus described Tedeschi's accomplice as wearing a mask and having tattoos that resembled teardrops under one eye.  Lawyer also testified that Tedeschi gave him the address of the apartment that he shared with defendant, advised that defendant was named "Luvy or Luvly" and provided Lawyer with the name of defendant's girlfriend.  When Lawyer arrived at Tedeschi's apartment, the girlfriend was there and she revealed that defendant's brother, Raheem Sanford, was also in the apartment.  Lawyer questioned Sanford, who was later arrested on an unrelated charge.  He also asked defendant's girlfriend and another woman who was at the apartment to accompany him to the police station for questioning.  Lawyer testified that while en route, approximately one hour later and one mile from Tedeschi's apartment, he observed a "taller black male" walking on the side of the road, noticed that the pedestrian resembled Sanford, and when he asked the two women in the backseat whether it was defendant, both put their heads down but did not otherwise respond.

Lawyer testified that when he pulled over and approached defendant, he noticed the tattoos under one eye that were not teardrops but dollar signs.  Defendant confirmed, when asked, that he was Luvly.  Lawyer advised defendant that his name had been raised in an investigation with regard to the home invasion,

but defendant claimed to have no knowledge of the event. Next, Lawyer explained that he asked defendant to interlace his fingers behind his head to facilitate a pat down and that, as a result, an interior pocket on defendant's jacket was exposed and Lawyer observed a knife. Lawyer placed handcuffs on defendant and waited for an evidence officer to arrive on the scene. The jury also heard expert testimony that forensic testing revealed Nieves' DNA on the knife.

Initially, we reject defendant's claim that Lawyer did not have probable cause to arrest him and that County Court should have held a Mapp hearing. Generally, a motion to suppress evidence must "state the ground or grounds of the motion and must contain sworn allegations of fact, whether of the defendant or of another person or persons supporting such grounds" (CPL 710.60 [1]). The trial court "may summarily deny the motion if . . . [t]he motion papers do not allege a ground constituting legal basis for the motion [or if the] sworn allegations of fact do not as a matter of law support the ground alleged" (CPL 710.60 [3] [a], [b]). "[T]he sufficiency of [the] defendant's factual allegations should be evaluated by (1) the face of the pleadings, (2) assessed in conjunction with the context of the motion, and (3) defendant's access to information" (People v Mendoza, 82 NY2d 415, 426 [1993]; see People v Atkinson, 111 AD3d 1061, 1063 [2013]; People v Vanness, 106 AD3d 1265, 1265-1266 [2013], lv denied 22 NY3d 1044 [2013]).

Here, defendant made his motion for a Mapp hearing prior to the jury trial, but after he had received the indictment and a witness list indicating that Tedeschi would be testifying. Notwithstanding this knowledge, his motion did not include any factual allegations to support his claim that the police lacked probable cause to stop him as he was walking down the street. Notably, in his motion, defendant did not allege that he had a knife when he was subsequently searched. Instead, he relied on certain discrepancies between the description the police had been given and his appearance. In this context, we find that County Court properly decided defendant's motion without a hearing (see CPL 710.60 [3] [b]; People v Mendoza, 82 NY2d at 426; People v Vanness, 106 AD3d at 1265-1266). Moreover, we discern no error in the court's refusal to suppress evidence of the knife. "Where

a police officer reasonably suspects 'that a particular person has committed . . . a felony or misdemeanor, the CPL authorizes a forcible stop and detention of that person'" (People v Stroman, 107 AD3d 1023, 1023 [2013], lv denied 21 NY3d 1046 [2013], quoting People v DeBour, 40 NY2d 210, 223 [1976]).  Based on the physical description of defendant, the resemblance to his brother, and the reaction by the two women in the backseat, Lawyer had a reasonable suspicion that defendant was the person who had committed the home invasion and could reasonably believe that it was necessary to stop defendant and to pat him down to determine whether he was in possession of a dangerous weapon (see People v Mitchell, 129 AD3d 1319, 1320 [2015]; People v Issac, 107 AD3d 1055, 1057 [2013]; People v Stroman, 107 AD3d at 1024).

Next, based on his claim that Tedeschi's testimony was not sufficiently corroborated, defendant argues that his convictions were not supported by legally sufficient evidence.  Generally, the testimony of an accomplice cannot form the basis of a conviction unless it is supported "by corroborative evidence tending to connect the defendant with the commission of such offense" (CPL 60.22 [1]).  The required "corroborative evidence . . . need not be powerful in itself . . .[,] show the commission of the crime [or] . . . show that defendant was connected with the commission of the crime.  It is enough if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth" (People v Reome, 15 NY3d 188, 191-192 [2010] [internal quotation marks and citation omitted]).  Corroborative evidence sufficiently connects the defendant to the crime if, when considered "with the accomplice's testimony, [it] makes it more likely that the defendant committed the offense, and thus tends to connect him [or her] to it" (id. at 194).

In our view, there was sufficient corroborative evidence to connect defendant to the commission of the crimes.  Tedeschi's testimony was corroborated by Melissa Columbus and Brad Columbus, who both confirmed certain details of the incident and, while they may have been inconsistent with regard to defendant's facial tattoo and whether there was a third person involved, identified defendant as an intruder in the apartment.  Their testimony, together with the DNA evidence on the knife, was enough to permit

the jury to conclude that Tedeschi was telling the truth (see People v Reome, 15 NY3d at 195).

Defendant also argues that County Court erred in not allowing his expert, a police detective with 24 years of experience, to testify with regard to crime scene investigations. Generally, "the admissibility and limits of expert testimony lie primarily in the sound discretion of the trial court" (People v Lee, 96 NY2d 157, 162 [2001]; see People v Salce, 124 AD3d 923, 926 [2015], lv denied 25 NY3d 1207 [2015]).  In exercising its discretion, the trial court must "determine when jurors are able to draw conclusions from the evidence based on their day-to-day experience, their common observation and their knowledge, and when they would be benefited by the specialized knowledge of an expert witness" (People v Cronin, 60 NY2d 430, 433 [1983]). Necessarily, "[a]s part of this process, the purpose for which the expert testimony is being offered must be examined" (People v Brown, 97 NY2d 500, 505 [2002]).

Defendant argued that the proposed witness would testify with regard to standard investigative procedures in general and, specifically, with regard to errors made by the Schenectady Police Department.  County Court determined that defendant's expert testimony would consist of general allegations that the investigation was inadequate and that such opinion was not outside of the jury's general knowledge.  Under the facts and circumstances of this case (see People v Lee, 96 NY2d at 163; People v Salce, 124 AD3d at 926), County Court did not abuse its discretion in precluding such testimony.

Next, we find that County Court properly imposed the DNA databank fee notwithstanding that defendant had paid the fee in the past following a prior conviction (see Penal Law § 60.35). Finally, because the record indicates that, at sentencing, counsel confirmed that defendant was not controverting any of the allegations set forth in the People's persistent violent felony offender statement (see CPL 400.15 [2]), defendant's claim that County Court improperly sentenced him as a persistent violent felony offender without a hearing is not preserved for our review.

Peters, P.J., Lahtinen and McCarthy, JJ., concur.


ORDERED that the judgment is affirmed.




ENTER:

Robert D. Mayberger
Clerk of the Court