People v West (2018 NY Slip Op 07373)





People v West


2018 NY Slip Op 07373


Decided on November 1, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 1, 2018

110080

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
ALEXANDER M. WEST, Appellant.

Calendar Date: September 14, 2018

Before: Egan Jr., J.P., Lynch, Devine, Clark and Rumsey, JJ.


Cheryl Coleman, Albany, for appellant.
Jason M. Carusone, District Attorney, Lake George, for respondent.



MEMORANDUM AND ORDER
Egan Jr., J.
Appeal from a judgment of the County Court of Warren County (Hall Jr., J.), rendered June 5, 2017, upon a verdict convicting defendant of the crimes of manslaughter in the second degree, assault in the second degree, criminally negligent homicide, leaving the scene of an accident without reporting (two counts), boating while ability impaired by alcohol, reckless operation of a vessel and criminal possession of a controlled substance in the seventh degree.
During the early evening of July 25, 2016, Robert Knarr was piloting his antique wooden boat home on a post-dinner cruise with his family on Lake George when it was struck and overrun by another boat, which then left the scene. As a result of this collision, Knarr's eight-year-old granddaughter, Charlotte McCue, was killed and his daughter, Courtney McCue, Charlotte McCue's mother, was seriously injured. Police thereafter learned that defendant was a possible operator of the other boat and questioned him the following morning.
In October 2016, defendant was charged in a 12-count indictment with manslaughter in the second degree, assault in the second degree, vehicular manslaughter in the second degree, vehicular assault in the first degree, vehicular assault in the second degree, criminally negligent homicide, leaving the scene of an accident without reporting (two counts), boating while ability impaired by alcohol, boating while ability impaired by drugs, reckless operation of vessel and criminal possession of a controlled substance in the seventh degree, all related to this incident. Defendant thereafter moved to, among other things, dismiss the indictment or, alternatively, for inspection of the grand jury minutes on the ground that there was legally insufficient evidence to support the indictment and that it was otherwise defective, which motion County Court denied. Following a jury trial, defendant was convicted of manslaughter in the second degree, assault in the second degree, criminally negligent homicide, leaving the scene of an accident without reporting (two counts), boating while ability impaired by alcohol, reckless operation of a vessel and criminal possession of a controlled substance in the seventh degree, and acquitted of vehicular manslaughter in the second degree, vehicular assault in the first degree, vehicular assault in the second degree and boating while ability impaired by drugs. Defendant was [*2]thereafter sentenced to an aggregate term of 5 to 15 years in prison, with the sentences to run concurrently. Defendant now appeals.
Defendant initially contends that the integrity of the grand jury proceeding was undermined, and the indictment rendered defective, when the People presented inadmissible blood test evidence to the grand jury. We disagree. A motion to dismiss an indictment may be granted upon a determination that the integrity of the grand jury proceedings has been so impaired that prejudice to the defendant may result (see CPL 210.35 [5]; People v Huston, 88 NY2d 400, 406-408 [1996]; People v Pelchat, 62 NY2d 97, 106 [1984]; People v Tatro, 53 AD3d 781, 783 [2008], lv denied 11 NY3d 835 [2008]). Dismissal of an indictment, however, "is a drastic, exceptional remedy and 'should thus be limited to those instances where prosecutorial wrongdoing, fraudulent conduct or errors potentially prejudice the ultimate decision reached by the [g]rand [j]ury'" (People v Moffitt, 20 AD3d 687, 688 [2005], lv denied 5 NY3d 854 [2005], quoting People v Huston, 88 NY2d at 409; accord People v Kidwell, 88 AD3d 1060, 1061 [2011]). Notably, "[e]ven where inadmissible evidence is presented to a grand jury, such will be deemed fatal only when the remaining evidence is insufficient to sustain the indictment" (People v Sutherland, 104 AD3d 1064, 1067 [2013] [internal quotation marks and citations omitted]; see People v Huston, 88 NY2d at 409).
Here, on the morning of July 26, 2016, defendant initially consented to a police request to have his blood drawn for chemical analysis, but, following receipt of a letter from a local attorney indicating that he was representing defendant, the Warren County Sheriff's Department delayed the planned blood draw and applied to County Court for a search warrant. After an investigator for the Sheriff's Department received verbal authorization from County Court, a sample of defendant's blood was drawn at an area hospital for analysis; however, no written search warrant was actually signed by County Court until the following day, July 27, 2016. After defendant was indicted, and in response to defendant's omnibus motion, seeking, among other things, suppression of the chemical analysis of defendant's blood, the People conceded that defendant's blood draw was not performed pursuant to a valid warrant and consented to suppression of his blood test results. There is no evidence in the record that the People made an intentional decision to present inadmissible evidence to the grand jury or otherwise acted in bad faith (see People v Boddie, 126 AD3d 1129, 1130 [2015], lv denied 26 NY3d 1085 [2015]). Moreover, having reviewed the transcript of the grand jury proceedings, we find that there was other legally sufficient evidence presented to the grand jury to support the charges such that dismissal of the indictment was not required under the circumstances (see People v Huston, 88 NY2d at 409; People v Gordon, 88 NY2d 92, 98 [1996]; People v Mesko, 150 AD3d 1412, 1415 [2017], lv denied 29 NY3d 1131 [2017]; People v Sutherland, 104 AD3d at 1067; People v Kidwell, 88 AD3d at 1061).
County Court did not err when it granted the People's for-cause challenge with respect to sworn juror No. 107. As relevant here, "[a] challenge for cause of a prospective juror which is not made before he [or she] is sworn as a trial juror shall be deemed to have been waived, except that such a challenge based upon a ground not known to the challenging party at that time may be made at any time before a witness is sworn at the trial" (CPL 270.15 [4]; People v Wlasiuk, 90 AD3d 1405, 1409 n 2 [2011]; People v Jackson, 182 AD2d 919, 919 [1992], lv denied 80 NY2d 832 [1992]). To that end, a party may challenge a prospective juror for cause if such juror "has a state of mind that is likely to preclude him [or her] from rendering an impartial verdict based upon the evidence adduced at the trial" (CPL 270.20 [1] [b]; see People v Harris, 19 NY3d 679, 685 [2012]). Notably, "[i]f there is any doubt about a prospective juror's impartiality, the trial court should err on the side of excusing the juror, since at worst the court will have replaced one impartial juror with another" (People v Arnold, 96 NY2d 358, 362 [2001] [internal quotation marks and citation omitted]; see People v Harris, 19 NY3d at 685; People v Johnson, 17 NY3d 752, 753 [2011]; People v Powell, 153 AD3d 1034, 1035-1036 [2017]; People v Briskin, 125 AD3d 1113, 1117 [2015], lv denied 25 NY3d 1069 [2015]).
Here, juror No. 107 was the first juror selected during jury selection and he was duly sworn in by County Court. Unbeknownst to any of the parties at that time, however, the Sheriff's [*3]Department had received a criminal complaint against juror No. 107 that very same day, accusing him of rape. The following morning, prior to continuation of jury selection, the People challenged him for cause based upon this development. Defendant objected, and, after hearing from both sides, County Court granted the People's challenge and discharged juror No. 107, without questioning the juror himself. We find no abuse of discretion by County Court in discharging this juror as the prospect of him sitting as a juror in this case while simultaneously being investigated by the Sheriff's Department and potentially prosecuted by the Warren County District Attorney's office — the same two entities that had, respectively, investigated and were now prosecuting defendant — was clearly likely to compromise the ability of juror No. 107 to render an impartial verdict (see CPL 270.15 [4]; 270.20 [1] [b]; People v Scott, 16 NY3d 589, 595 [2011]; People v Gaines, 258 AD2d 921, 921 [1999], lv denied 93 NY2d 899 [1999]). Moreover, to the extent that defendant contends that County Court further erred by failing to make an inquiry of the juror himself prior to his discharge, he failed to preserve said contention by requesting that such an inquiry be conducted (see CPL 470.05 [2]; People v Hicks, 6 NY3d 737, 739 [2005]; People v Reichel, 110 AD3d 1356, 1358 n 5 [2013], lv denied 22 NY3d 1090 [2014]). In any event, the failure to conduct such an inquiry did not constitute an abuse of discretion under the circumstances, as any potential questioning of the juror, by County Court and/or counsel, had the distinct potential of infringing upon his Fifth Amendment right against self-incrimination (see CPL 270.15 [4]; People v Scott, 16 NY3d at 595).
Defendant next argues that his convictions for manslaughter in the second degree and assault in the second degree are not supported by legally sufficient evidence and that all of his convictions are against the weight of the evidence. Specifically, defendant contends that there was insufficient evidence that defendant acted with the requisite degree of recklessness required to convict him of manslaughter in the second degree and assault in the second degree. When reviewing a legal sufficiency claim, "we view the evidence in the light most favorable to the People and evaluate whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Wilson, 164 AD3d 1012, 1014 [2018] [internal quotation marks and citations omitted]; see People v Reed, 22 NY3d 530, 534 [2011]; People v Poulin, 159 AD3d 1049, 1050 [2018], lv denied 32 NY3d 940 [2018]). In contrast, when assessing the weight of the evidence, where, as here, a different verdict would not have been unreasonable, this Court "must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Bleakley, 69 NY2d 490, 495 [1987] [internal quotation marks and citation omitted]; see People v Danielson, 9 NY3d 342, 348 [2007]; People v Peters, 126 AD3d 1029, 1031 [2015], lv denied 25 NY3d 991 [2015]).
With respect to the charge of manslaughter in the second degree, the People were required to prove that defendant "recklessly cause[d] the death of another person" (Penal Law § 125.15 [1]). With respect to the charge of assault in the second degree, the People were required to prove that defendant recklessly caused "serious physical injury to another person by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.05 [4]). In the context of both charges, "[a] person acts recklessly . . . when he [or she] is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation" (Penal Law § 15.05 [3]; see People v Jorgensen, 26 NY3d 85, 90 [2015]; People v Lavalley, 158 AD3d 993, 994 [2018]; People v Crosby, 151 AD3d 1184, 1186 [2017]).
The credible evidence presented at trial established that, on the day of the collision, July 25, 2016, defendant and a group of acquaintances attended "Log Bay Day," an annual event where multiple boats gather at Log Bay on Lake George. That morning, defendant and four friends boarded defendant's family boat, a 21-foot Larson, at the Marine Village Resort, bringing with them two cases of beer. Defendant then drove the boat to Chelka Lodge, where he picked up three more individuals, another case of beer and containers of "jungle juice," described as a [*4]mixture of vodka, rum, champagne and fruit juice. Prior to leaving Chelka Lodge, defendant consumed his first beer and then proceeded to Log Bay, arriving sometime between 10:30 a.m. and 11:00 a.m. The group proceeded to spend the day at the event, during the course of which defendant consumed quantities of beer, jungle juice, concentrated cannabis and cocaine. At around 6:00 p.m., the group left Log Bay and, with defendant's friend now driving the boat, proceeded to a nearby restaurant where defendant consumed two vodka cocktails with dinner. Following dinner, defendant and four of the friends returned to the boat and, with defendant back behind the helm, proceeded south on Lake George.
At approximately 9:20 p.m., defendant's boat, travelling in excess of the 25 mile-per-hour nighttime speed limit on the lake, overtook Knarr's boat, struck it on the right side, became airborne and travelled over the top of it before returning to the water, damaging both boats and inflicting fatal injuries to Charlotte McCue and serious physical injuries to her mother. Defendant stopped his boat for a few moments, but, despite the screams coming from Knarr's boat, which could be heard from his boat, he resumed his course south. Rather than pilot the boat back to the Marine Village Resort where the group had departed from that morning and where his truck remained parked, defendant instead pulled his boat into a slip at a closer resort. After docking, occupants of defendant's boat were overheard discussing whether to remove a cooler from the boat and not talking about the incident with anyone. Defendant and his passengers then walked to the nearby home of one of defendant's friends where they secured a ride.
In our view, when viewed in a light most favorable to the People, we find that the evidence overwhelmingly established that defendant, after a day spent ingesting quantities of alcohol and illegal drugs on the lake, decided to operate his boat, at night, in excess of the speed limit and without proper lookouts, failed to observe Knarr's boat prior to impact and hit it, causing the death of Charlotte McCue and serious physical injuries to her mother. This evidence provided a valid line of reasoning and permissible inferences from which a rational jury could conclude that defendant acted with the requisite degree of recklessness to support convictions for manslaughter in the second degree and assault in the second degree by disregarding the known and inherent risks of boating at night while under the influence of drugs and alcohol (see People v Briskin, 125 AD3d at 1119-1120). With respect to defendant's weight of the evidence challenge,[FN1] while a different verdict would not have been unreasonable, based on the aforementioned evidence, there was overwhelming proof from which the jury could validly infer that defendant operated his boat on the evening in question while under the influence of alcohol, in a reckless manner that endangered others, unlawfully possessed cocaine [FN2] and left the scene of a personal injury accident involving a death and serious physical injuries without reporting, thus, engaging in "blameworthy conduct creating or contributing to a substantial and unjustifiable risk of death" (People v Boutin, 75 NY2d 692, 696 [1990]; accord People v Gerbino, 161 AD3d 1220, 1222 [2018]; see People v Newman, 26 AD3d 589, 592 [2006], lv denied 7 NY3d 815 [*5][2006]). Accordingly, viewing this evidence in a neutral light and according the appropriate deference to the jury's credibility assessments, we are satisfied that defendant's convictions were not against the weight of the evidence (see People v Bleakley, 69 NY2d at 495).
Nor do we find that County Court erred in precluding defendant's expert from offering his opinion regarding the cause and mechanism of the collision. The admissibility and scope of expert testimony is addressed to the sound discretion of the trial court (see People v Bedessie, 19 NY3d 147, 156 [2012]; People v Godallah, 132 AD3d 1146, 1150 [2015]), and its "determination will not be disturbed absent a showing of serious mistake, error of law or abuse of discretion" (People v Callicut, 101 AD3d 1256, 1264 [2012] [internal quotation marks and citations omitted], lvs denied 20 NY3d 1096, 1097 [2013]; see People v Page, 225 AD2d 831, 833-834 [1996], lv denied 88 NY2d 883 [1996]). Here, defendant's expert was a former employee for the Atomic Energy Commission and a 25-year agent for the FBI who, among other things, studied mathematics and physics in college, performed graduate work in physics and had obtained his United State Coast Guard Masters License. He also testified to his 10-year history in the FBI's boat program, his extensive boating experience and the fact that he had been qualified as a boating expert in three previous cases in which he had been called to testify. Notwithstanding, he unequivocally acknowledged that he had no prior experience in marine accident reconstruction. We discern no abuse of discretion, therefore, in County Court's determination to limit his testimony to topics pertaining to his expertise in "his experience with boating and the rules of the road." Moreover, despite County Court's ruling affirmatively precluding defendant's expert from testifying as to his conclusion regarding the cause of the collision, defense counsel was nevertheless able to extract the expert's opinion that, based upon his review of the damage to both defendant's boat and Knarr's boat, defendant had the right-of-way and that the collision was the result of a "crossing situation" and not an "overtaking" as asserted by the People's expert. Accordingly, defendant's expert was not wholly precluded from answering questions relevant to the issue of causation and presented evidence directly rebutting the conclusion of the People's expert (see People v Page, 225 AD2d at 834).
We also reject defendant's contention that County Court committed reversible error in allowing the People to impeach their own witness with a prior inconsistent statement to police. "A party may impeach its own witness with a prior contradictory statement when the witness gives testimony upon a material issue or fact which tends to disprove the party's position or affirmatively damages the party's case" (People v Grierson, 154 AD3d 1071, 1073 [2017] [internal quotation marks, emphasis and citations omitted]; see CPL 60.35 [1]). The People's witness, Michael Kenny, testified on direct examination that defendant and a group of friends showed up at his house around 10:00 p.m. on the night in question and asked for a ride. Kenny testified that defendant told him that "he had messed up," but that he did not otherwise appear to be impaired. On redirect, however, the People presented Kenny with a prior statement that he had provided to police and elicited testimony from him acknowledging that he had previously told the police that defendant and his friends appeared to be "a little bit intoxicated" that night. Inasmuch as the record establishes that the People introduced Kenny's prior inconsistent statement for the express purpose of refuting his direct testimony that defendant did not appear to be impaired — which tended to disprove the People's theory that defendant was intoxicated — County Court properly permitted the People to use such statement for impeachment purposes (see CPL 60.35 [1]; People v Berry, 27 NY3d 10, 17-18 [2016]; People v Hull, 125 AD3d 1099, 1101 [2015], affd 27 NY3d 1056 [2016]; compare People v Grierson, 154 AD3d at 1073).
With respect to County Court's remaining evidentiary rulings at trial, we discern no abuse of discretion (see People v Carroll, 95 NY2d 375, 385 [2000]; People v Wynn, 149 AD3d 1252, 1255 [2017], lv denied 29 NY3d 1136 [2017]; People v Collins, 126 AD3d 1132, 1133 [2015], lv denied 25 NY3d 1161 [2015]). The challenged testimony with respect to defendant's possession and use of marihuana and obtaining cocaine for the Log Bay Day event was relevant to the crimes for which defendant was on trial and, as such, did not constitute Molineaux evidence (see People v Frumusa, 29 NY3d 364, 370 [2017]). Similarly, the photographs of defendant's parked truck were not improperly admitted, as they were relevant to the issue of defendant's alleged intoxication on the day in question (see generally People v Nelson, 27 NY3d [*6]361, 370 [2016], cert denied ___ US ___, 137 S Ct 175 [2016]; People v Wemette, 285 AD2d 729, 730 [2001], lv denied 97 NY2d 689 [2001]). Moreover, the challenged 911 calls were relevant to material issues in the case, their probative value outweighed any perceived prejudicial effect and they were properly admitted as exceptions to the hearsay doctrine (see People v Coleman, 151 AD3d 1385, 1387-1388 [2017], lv denied 29 NY3d 1125 [2017]). We have reviewed defendant's remaining evidentiary claims and find that, given the strength of the evidence of defendant's guilt and the fact that there was no significant probability that the jury would have acquitted defendant had such evidence not been admitted, such claims were either without merit or constituted harmless error (see People v Crimmins, 36 NY2d 230, 242 [1975]; see also People v Bisnauth, 149 AD3d 860, 861 [2017], lv denied 30 NY3d 947 [2017]).
Finally, although defendant has no prior criminal history, given defendant's choice to consume a toxic mix of alcohol and drugs and then operate a boat, at night, striking another boat, killing an eight-year-old girl and seriously injuring her mother and then leaving the scene, we find no abuse of discretion or extraordinary circumstances warranting a reduction of the sentence in the interest of justice (see CPL 470.15 [3] [c]; [6] [b]; People v Maricevic, 52 AD3d 1043, 1047 [2008], lv denied 11 NY3d 790 [2008]). To the extent not specifically addressed, defendant's remaining contentions have been reviewed and found to be without merit.
Lynch, Devine, Clark and Rumsey, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: With respect to defendant's conviction for criminally negligent homicide, the People were required to prove that defendant caused the death of another person with criminal negligence (see Penal Law § 125.10). With respect to the two charges of leaving the scene of an accident without reporting, the People were required to prove that defendant knew or should have known that serious physical injury and/or death had been caused to another person due to the collision of the vessels and that he did not stop and provide his information to the injured party or report same to the nearest authority (see Navigation Law § 47 [2] [a], [b] [i], [ii]). With respect to boating while ability impaired by alcohol, the People were required to prove that defendant operated his boat while impaired by the consumption of alcohol (see Navigation Law § 49-a [2] [a]). With respect to reckless operation of a vessel, the People were required to prove that defendant did not operate his boat in "a careful and prudent manner" (Navigation Law § 45 [1] [a]). Lastly, with respect to criminal possession of a controlled substance in the seventh degree, the People were required to prove that defendant knowingly and unlawfully possessed a controlled substance (see Penal Law § 220.03).

Footnote 2: The parties stipulated at trial that, on the day of the collision, defendant knowingly and unlawfully possessed cocaine.