People v Mawhiney (2023 NY Slip Op 05289)

People v Mawhiney

2023 NY Slip Op 05289

Decided on October 19, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 19, 2023

113199
[*1]The People of the State of New York, Respondent,
v
Scott A. Mawhiney, Appellant.

Calendar Date:September 13, 2023

Before:Garry, P.J., Egan Jr., Aarons, McShan and Mackey, JJ.

Law Office of Ronald R. Benjamin, Binghamton (Ronald R. Benjamin of counsel), for appellant.
Michael A. Korchak, District Attorney, Binghamton (Benjamin E. Holwitt of counsel), for respondent.

Egan Jr., J.
Appeal from a judgment of the County Court of Broome County (Kevin P. Dooley, J.), rendered February 4, 2022, upon a verdict convicting defendant of the crimes of attempted murder in the first degree, aggravated assault upon a police officer, criminal possession of a weapon in the fourth degree and harassment in the second degree.
At approximately 5:30 p.m. on June 23, 2021, defendant left work early after becoming upset about the parking situation there and purportedly took a dose of the prescription drug clonazepam.[FN1] He then drove home, where he mixed and drank at least three alcoholic beverages he referred to as White Russians.[FN2] Around 9:00 p.m., he became embroiled in an argument with his fiancÉe about her suspected infidelity. The argument turned physical and, after defendant assaulted his daughter, she and his fiancÉe left the house. The fiancÉe called 911 once she got to a neighbor's house across the street and reported the incident, adding that defendant was "drunk as a skunk" and had a shotgun. While she was speaking to the dispatcher, defendant went into the backyard of his residence and fired a shot from a 20 gauge bolt action shotgun.
A state trooper arrived a couple of minutes after the 911 call and was the first law enforcement officer on the scene. He parked across the street and, after encountering the fiancÉe and directing her to go inside the neighbor's house, took cover behind his troop car, which still had its rear emergency lights activated. Defendant opened fire at the troop car through his kitchen window — which subsequent measurements reflected was about 74 feet away — and a shotgun slug struck and shattered the spotlight mounted on the front passenger side of the vehicle. After seeing the spotlight explode and radioing in a "shots fired" report at 9:13 p.m., the trooper felt "a warm sensation running down [his] arm" and realized that he had been hit and was bleeding. The trooper applied a tourniquet to stanch the bleeding and was soon transported away from the scene so that he could receive medical attention.
Over the course of the next hour, defendant was text messaging and calling various family members and acquaintances, telling them that he knew he was going to die, that he knew he had shot a cop and that, if the police entered the residence, he was going to shoot them. He also fired another shell containing birdshot at troopers who were moving up a neighbor's driveway on the side of the residence in an effort to surround it. At approximately 10:15 p.m., defendant walked outside, unarmed and with his hands up. He was taken into custody and then told an investigator, among other things, what had led up to the incident and how he had fired three slugs toward the "flashing lights" in the street and one round of shot toward the troopers "creeping up [his] neighbor's driveway." He also repeatedly stated that he "couldn't believe he [had] shot a cop."
Defendant was thereafter charged in a nine-count indictment with attempted [*2]murder in the first degree, attempted murder in the second degree, aggravated assault upon a police officer, assault in the first degree, criminal use of a firearm in the first degree, two counts of assault in the second degree, criminal possession of a weapon in the fourth degree and harassment in the second degree. In relevant part, the attempted murder in the first degree count required that defendant act with "intent to cause the death of" a person he knew or reasonably should have known to be a police officer who had been engaged in the course of performing his or her duties (Penal Law § 125.27 [1] [a] [i]; see Penal Law § 110.00), while the aggravated assault upon a police officer charge required that defendant act "with intent to cause serious physical injury" to such a person "by means of a deadly weapon or dangerous instrument" (Penal Law § 120.11).
Defendant gave notice that he intended to present medical testimony at trial from a psychiatrist who would opine that defendant lacked the ability to form the intent to kill or seriously injure a police officer due to his intoxication, and the People moved to preclude that testimony. The psychiatrist specifically set forth in a written report how the combination of alcohol and clonazepam increased the side effects of alcohol and caused unusual behavior and memory problems such as blackouts, noting in particular that defendant's blood alcohol content would have been at least .229% after three hours of drinking given the amount he claimed to have drunk and that the use of clonazepam would have "significantly increase[d] the level of intoxication." The psychiatrist further described how defendant's behavior and statements reflected an apparent "plan[ ] to kill himself or have the troopers kill him," but that his behavior and statements also reflected cognitive impairment that left him unable to "utilize[ ] information in a logical way." For instance, the psychiatrist observed that a person intending to shoot at the trooper would not have, unlike defendant, shot at the "lights" outside through a closed kitchen window with the curtains closed, and she cited the comment of a friend of defendant's fiancÉe who had a prolonged telephone conversation with defendant during the standoff and described him as extremely emotional and unable to have "cohesive thoughts." As such, although the psychiatrist was satisfied that defendant understood that he was in a serious, possibly fatal, standoff with the police and that shooting someone could kill them, she opined in her report that his cognitive impairment left him "unable to form the requisite specific intent to cause death, or to cause serious physical injury of a police officer." County Court granted the People's motion to preclude the psychiatrist's testimony, finding that the issue of defendant's intoxication and the impact it had on his thinking and behavior was a matter within the average juror's understanding and did not require expert knowledge.
At [*3]the outset of trial, defendant indicated that he intended to call his treating physician to testify that she had prescribed clonazepam for him and that the drug should not be taken with alcohol because it has a "synergistic effect" that "increase[s] the level of intoxication exponentially." County Court declined to allow that testimony, explaining that it viewed the physician's testimony as covering the same ground as the precluded expert testimony and that the question of defendant's intoxication involved a matter within the average juror's understanding. County Court further rejected, on hearsay grounds, defendant's efforts to place into evidence an email from a State Police lieutenant, who was not at the scene of the incident, who provided a "preliminary investigation" report of the incident in which he described defendant as "highly intoxicated." At the conclusion of trial, the jury found defendant guilty of attempted murder in the first degree, aggravated assault upon a police officer, criminal possession of a weapon in the fourth degree and harassment in the second degree. County Court sentenced defendant to a prison term of 30 years to life for the attempted murder conviction, a concurrent prison term of 25 years and five years of postrelease supervision on the aggravated assault conviction, and lesser concurrent terms of incarceration on the remaining two counts. Defendant appeals, and we reverse.
There was no dispute at trial as to whether defendant had engaged in the conduct that led to the charges against him, with defendant solely arguing that he lacked the requisite intent to commit the charged crimes. He further offers no argument on appeal as to whether the evidence is legally sufficient to support the jury's verdict, and we have no difficulty concluding that it is. Defendant instead argues that a new trial is required because County Court erred in preventing him from presenting evidence relating to his intoxication that was relevant to the key issue of intent. We agree.
Defendant initially argues that County Court abused its discretion in precluding expert testimony from a psychiatrist on the issue of whether his alcohol and clonazepam use, in combination, enhanced his intoxication and left him unable to form the intent to kill or seriously injure a police officer required to prove attempted murder in the first degree and aggravated assault upon a police officer. "As a general rule, the admissibility and limits of expert testimony lie primarily in the sound discretion of the trial court" (People v Lee, 96 NY2d 157, 162 [2001]; see People v Godallah, 132 AD3d 1146, 1150 [3d Dept 2015]). The criteria to be used is "whether the proffered expert testimony 'would aid a lay jury in reaching a verdict' " (People v Lee, 96 NY2d at 162, quoting People v Taylor, 75 NY2d 277, 288 [1990]; accord People v Anderson, 36 NY3d 1109, 1111 [2021]), however, and the testimony proffered here regarding the effect of combined clonazepam and alcohol use [*4]would undoubtedly be useful to a lay jury in assessing "the ability of a defendant to form the intent to commit a crime following drug and alcohol consumption" (People v Donohue, 123 AD2d 77, 79 [3d Dept 1987], lv denied 69 NY2d 879 [1987]; see People v Cronin, 60 NY2d 430, 433 [1983]). As the Court of Appeals explained when presented with a comparable situation, while "jurors might be familiar with the effects of alcohol on one's mental state, the combined impact of" alcohol and other drugs "on a person's ability to act purposefully cannot be said as a matter of law to be within the ken of the typical juror" (People v Cronin, 60 NY2d at 433; compare People v Pascuzzi, 173 AD3d 1367, 1376 [3d Dept 2019], lv denied 34 NY3d 953 [2019]; People v Covington, 298 AD2d 930, 930 [4th Dept 2002], lv denied 99 NY2d 557 [2002]).
Indeed, the expert psychiatrist described in her report how the impact would be different from the ordinary alcohol intoxication with which a lay juror would be familiar, describing how mixing clonazepam with alcohol worsened the side effects of drinking and caused symptoms such as "unusual behavior, and . . . memory problems," as well as how their combined use would "significantly increase the level of intoxication" over what would be expected from alcohol alone. She further demonstrated a familiarity with defendant's purported drug and alcohol consumption on the evening of the incident, and was accordingly able to express her opinion with regard to his intent (or lack thereof) with "a reasonable degree of certainty" (People v Donohue, 123 AD2d at 79).[FN3] The expert testimony would therefore be of use to a jury in assessing defendant's argument regarding his lack of the requisite intent and, as expert proof should not be excluded "merely because, to some degree, it invades the jury's province" of fact finding (People v Lee, 96 NY2d at 162; see People v Bedessie, 19 NY3d 147, 156 [2012]), we find that County Court abused its discretion in precluding the testimony proffered by defendant on that sharply disputed issue (see People v Cronin, 60 NY2d at 433-434; People v Salce, 124 AD3d 923, 926 [3d Dept 2015], lv denied 25 NY3d 1207 [2015]; People v Jones, 210 AD2d 904, 904 [4th Dept 1994], affd on different grounds 85 NY2d 998 [1995]; People v Real, 137 AD2d 416, 416-417 [1st Dept 1988]; see also People v Wilson, 136 AD2d 800, 800-801 [3d Dept 1988], lv denied 71 NY2d 974 [1988]; cf. People v Benson, 206 AD2d 674, 675 [3d Dept 1994], lv denied 84 NY2d 1029 [1995]).
We further agree with defendant that County Court erred in refusing to allow defendant to question the author of the preliminary investigation report describing defendant as "highly intoxicated" and then declining to admit the document into evidence on hearsay grounds because its author was not present on the night of the incident. Defendant must be afforded an opportunity to establish the proper foundation to qualify the email as a business record within the meaning of CPLR [*5]4518 and, if defendant is successful in that effort, the fact that its author lacked personal knowledge of defendant's intoxication goes to the weight, not the admissibility, of the statements therein (see People v Reeves, 124 AD3d 1068, 1070 [3d Dept 2015], lv denied 25 NY3d 1076 [2015]). As the foregoing errors, particularly in combination, plainly prejudiced defendant by preventing him from presenting proof on his intoxication and ability to form the necessary intent that was the key issue in his defense, the judgment must be reversed and the matter remitted for a new trial (see People v Salce, 124 AD3d at 926).
Garry, P.J., Aarons, McShan and Mackey, JJ., concur.
ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Broome County for a new trial.

Footnotes

Footnote 1: "Clonazepam is used alone or in combination with other medications to control certain types of seizures. It is also used to relieve panic attacks" (Clonazepam, MedlinePlus, National Lib. of Medicine, National Insts. of Health [May 2021], available at https://medlineplus.gov/druginfo/meds/a682279.html [last accessed Oct. 12, 2023]).

Footnote 2: Defendant stated that he made the beverage by putting two ice cubes in a drinking glass, filling it about halfway with flavored vodka, adding Irish cream, and topping it off with milk.

Footnote 3: In contrast, defendant did not suggest that his treating physician was familiar with his alcohol and drug consumption on the night of the shooting. As defendant failed to demonstrate that his treating physician could offer anything beyond supposition as to his intoxication and whether it might impact his ability to form the requisite intent, defendant's request to present that testimony was properly rejected (see People v Barber, 2 AD3d 1290, 1292 [4th Dept 2003], lv denied 2 NY3d 761 [2004]); People v Donohue, 123 AD2d at 79.