People v Smith (2024 NY Slip Op 05158)

People v Smith

2024 NY Slip Op 05158

Decided on October 17, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 17, 2024

112863
[*1]The People of the State of New York, Respondent,
v
Osbourne Smith, Appellant.

Calendar Date:September 11, 2024

Before:Aarons, J.P., Lynch, Ceresia, McShan and Mackey, JJ.

Lisa A. Burgess, Indian Lake, for appellant.
Andrew J. Wylie, District Attorney, Plattsburgh (Daniel P. Lennon of counsel), for respondent.

Ceresia, J.
Appeal from a judgment of the County Court of Clinton County (William A. Favreau, J.), rendered March 26, 2021, upon a verdict convicting defendant of the crimes of assault in the second degree, criminal possession of a weapon in the third degree, attempted assault in the second degree and assault in the third degree.
On the night of January 25, 2018, defendant and two friends traveled to the victim's home and engaged in a physical altercation wherein the victim was allegedly struck, kicked and choked by defendant and stabbed with a knife by one of defendant's friends. After defendant and the friends left, the victim called 911 and was taken to the hospital, where he remained for three days. Defendant was subsequently charged with gang assault in the first degree, criminal possession of a weapon in the third degree, attempted assault in the second degree and assault in the third degree. Following a jury trial, defendant was acquitted of gang assault in the first degree but convicted of the lesser included offense of assault in the second degree, as well as the other charges. Defendant failed to appear on the scheduled date of sentencing and was eventually returned to court on a bench warrant approximately two years later. He was ultimately sentenced, as a second felony offender, to a prison term of seven years, to be followed by five years of postrelease supervision, for his conviction of assault in the second degree, a concurrent prison term of 3½ to 7 years for his conviction of criminal possession of a weapon and lesser concurrent terms of incarceration on the remaining two convictions. Defendant appeals.
Initially, defendant contends that his conviction of assault in the second degree is against the weight of the evidence because the proof failed to show that he personally inflicted serious physical injury upon the victim. The People, however, aver that the evidence adduced at trial supports defendant's conviction under a theory of accessorial liability. "[T]here is no legal distinction between criminal liability as a principal or as an accessory to a crime" (People v Bowes, 206 AD3d 1260, 1261 [3d Dept 2022] [internal quotation marks and citation omitted]). Thus, "[w]hen one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct" (Penal Law § 20.00). As relevant here, the People were required to prove that defendant, personally or acting in concert with another person, caused the victim serious physical injury, and did so with the intent to cause such injury (see Penal Law §§ 20.00, 120.05 [2]; People v Baugh, 101 AD3d 1359, 1362 [3d Dept 2012], lv denied 21 NY3d 911 [2013]).
Witness testimony at trial revealed the following. On the night of the incident, the victim made an unflattering Facebook post about [*2]defendant and then, around 10:30 p.m., received an angry phone call from defendant, who was upset with the victim about the post and also about money purportedly owed to him. The victim told defendant "to be a man" and "to come face me . . . and then we [can] talk about it." Defendant, who appeared furious to his friends Logan Guastella and Scott Guerin, indicated that he wanted to go to the victim's house and fight the victim, and the three then drove there together. Defendant brought a bottle of Jack Daniels and gave directions to Guerin, who was driving. While en route, Guastella and defendant were preparing themselves to "throw down" and "fight." Upon arrival, Guastella walked up to the house and the victim came out and tried to grab Guastella, who then began stabbing the victim with a knife. The victim saw defendant approaching out of the corner of his eye, wielding a "shiny type of bottle." Although the victim was unsure whether defendant hit him because his attention was focused on Guastella, both Guastella and Guerin saw defendant strike the victim with the bottle. The victim continued to struggle with Guastella while defendant kicked the victim in the ribs, punched him in the head and placed him in a chokehold. Guerin then said "let's go" and the three left, after which defendant burned the shirt he had been wearing during the fight. Meanwhile, the victim called 911 and awaited first responders while lying in a pool of blood, fearing he might die before help arrived. The victim suffered multiple stab wounds, a collapsed lung, an associated life-threatening tension pneumothorax causing pressure on the heart, a fractured rib, bruising along his side and head pain.
Although a different verdict would not have been unreasonable in light of Guastella's testimony that he alone stabbed the victim, defendant's conviction is nonetheless supported by the weight of the evidence (see People v Andrews, 127 AD3d 1417, 1420 [3d Dept 2015], lv denied 25 NY3d 1159 [2015]; People v Shuaib, 111 AD3d 1055, 1057 [3d Dept 2013], lv denied 24 NY3d 1046 [2014]). The proof showed that the altercation arose out of a dispute between defendant and the victim. Defendant essentially recruited Guastella and Guerin to join him, and ultimately struck, kicked and choked the victim while Guastella stabbed him. Thus, even though defendant did not personally wield the knife, the evidence supports a finding that he acted as an accomplice by sharing a community of purpose with Guastella and assisting in carrying out the attack (see People v Lavayen, 200 AD3d 1069, 1070 [2d Dept 2021], lv denied 38 NY3d 928 [2022]; People v Maldonado, 189 AD3d 2083, 2085 [4th Dept 2020], lv denied 36 NY3d 1098 [2021]; People v Shuaib, 111 AD3d at 1056-1057; People v Thompson, 79 AD3d 1269, 1271 [3d Dept 2010]; contra People v Walker, 227 AD3d 1129, 1132 [3d Dept 2024]). Despite defendant's assertion that the eyewitness testimony against him must be rejected on the basis that it was untruthful and [*3]self-serving, we discern no reason to disturb the jury's credibility determinations, as nothing suggested that the witnesses' accounts, which were largely consistent with each other, "were inherently unbelievable or incredible as a matter of law" (People v Cuadrado, 227 AD3d 1174, 1178 [3d Dept 2024] [internal quotation marks and citations omitted]; see People v Roberts, 203 AD3d 1465, 1467 [3d Dept 2022]).
That said, we agree with defendant that County Court improperly refused to instruct the jury as to the defense of intoxication. "An intoxication charge is warranted if, viewing the evidence in the light most favorable to the defendant, there is sufficient evidence of intoxication in the record for a reasonable person to entertain a doubt as to the element of intent on that basis" (People v Sirico, 17 NY3d 744, 745 [2011] [internal quotation marks and citations omitted]; see People v Adrian, 209 AD3d 1116, 1117 [3d Dept 2022]).[FN1] The charge should be given when there is "evidence of the recent use of intoxicants of such nature or quantity to support the inference that their ingestion was sufficient to affect defendant's ability to form the necessary criminal intent" (People v Rodriguez, 76 NY2d 918, 920 [1990]; accord People v Sirico, 17 NY3d at 745). It is true that more is required than "a bare assertion by a defendant that he was intoxicated," but the threshold to demonstrate entitlement to the charge is nevertheless "relatively low" (People v Gaines, 83 NY2d 925, 927 [1994]). We find that the evidence presented at trial regarding defendant's consumption of alcohol during the afternoon and evening on the date in question easily surpassed this low bar.
Guerin testified that he saw defendant drinking vodka as early as 1:30 p.m. on the day of the incident as well as whiskey later that night, and it "seemed like [defendant] got a little bit more intoxicated" as the night went on, as his movements were getting "sloppy." Guastella, who was with defendant in the "late evening," testified that he personally drank "[a]t least a box of wine" while defendant had "[a] little bit more than what I had." A third eyewitness testified that he was with defendant from around 9:30 to 11:00 p.m., during which time he observed defendant drinking wine, champagne and whiskey, and he noticed defendant slurring his words and giggling, which the eyewitness characterized as signs of intoxication. Furthermore, defendant told the police that he was drinking that night and, though he could remember being angry and exchanging words with the victim, he "must have blacked out" and could not recall very much, including how he got to and from the victim's house. This proof, when considered in the light most favorable to defendant, was sufficient to allow a reasonable person to harbor doubt concerning the element of intent (see People v Adrian, 209 AD3d at 1119). Accordingly, County Court's refusal to provide the intoxication instruction was error, requiring reversal (see People [*4]v Perry, 61 NY2d 849, 850 [1984]; People v Sabirov, 184 AD3d 714, 717 [2d Dept 2020]; People v Goldring, 133 AD3d 684, 685 [2d Dept 2015], lv denied 27 NY3d 965 [2016]).
Aarons, J.P., Lynch, McShan and Mackey, JJ., concur.
ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Clinton County for a new trial.

Footnotes

Footnote 1: Intent was an element of each of the crimes submitted to the jury.